IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

JOHN M. MACK
    Plaintiff

v.                                                                                                    Civil Action:   JMF 02-3089

THE STATE OF MARYLAND
    Serve on:
      J. JOSEPH CURRAN
      Attorney General
      200 St. Paul Street
      Baltimore, Maryland 21202
    and
THE BALTIMORE CITY POLICE DEPARTMENT
      601 E. Fayette Street
      Baltimore, Maryland 21202
    Serve on:
      KEVIN CLARK
      Police Commissioner
      601 E. Fayette Street
      Baltimore, Maryland 21202
    and
EDWARD NORRIS, individually
and as Commissioner of The
Baltimore City Police Department
    and
ANTONIO WILLIAMS, individually
and as Major of the Baltimore City Police Department
    and
MARTIN O'MALLEY, individually
and as Mayor of the City of Baltimore
    and
MAYOR & CITY COUNCIL OF BALTIMORE
    Serve on:
      Thurmon Zolicofer
      City Solicitor
      100 North Holiday Street
      Baltimore, Maryland 21202
        Defendants

<u>AMENDED COMPLAINT</u>

John M. Mack, by Frederic M. Brandes his attorney, sues the State of Maryland, the Baltimore City Police Department, Edward Norris, Antonio Williams, and Martin O'Malley, Mayor and City Council Board and for cause states that:

<u>JURISDICTION AND VENUE</u>

1. This court has jurisdiction over this matter under 28 U.S.C. section 1331, 28 U.S.C. section 1343, 28 U.S.C. section 1343 and 42 U.S.C. section 2000.

2. This court has jurisdiction over this matter under 28 U.S.C. section 1391 and 42 U.S.C. section 2000 (5) (3).

<u>COUNT 1</u>

EMPLOYMENT DISCRIMINATION BASED ON RACE

<u>42 USC 2000e</u>

<u>(STATE OF MARYLAND AND BALTIMORE CITY POLICE DEPARTMENT)</u>

3. John Mack was employed by the Defendant, the State of Maryland and the Baltimore City Police Department, an arm of State Government.

4. The acts of discrimination on behalf of the State of Maryland and the Baltimore City Police Department were undertaken by Edward Norris the Commissioner of the Baltimore City Police Department and Antonio Williams a Major in the Baltimore City Police Department as both agents of the Maryland City Council and as private citizens.

5. On April 1st, 2001 Antonio Williams (herein after referred to as Williams) suspended unjustly John Mack from the Baltimore City Police Department and further unjustly suspended his police powers, both because he was Black.

6. Previously in March 2001, John Mack injured his knee, was unfit for duty through early April 2001, and notified Williams of this fact.

7. Subsequently, in the early morning hours of April 1st, 2001 investigative members of the Maryland Comptrollers Office supported by several members of the Baltimore City Police Department executed a search and seizure warrant on Ronnie's Westside Gallery. The purpose of the search and seizure execution was to determine whether or not there were sales of unlicensed liquor taking place on the premises. In the course of the execution of the warrant the Comptroller's Office and Baltimore City Police determined that John Mack was on the premises and that his service revolver was behind the counter. A full report of the incident was made by the Comptroller's Office to the Police Department and these were the operational facts of the raid that were reported to the Police Department concerning John Mack by the members of the Comptrollers office responsible for the raid. All this occurred while John Mack was off duty.

8. Immediately following the raid at Ronnie's Westside Gallery, John Mack contacted his supervisor, Williams, and informed him of these facts. John Mack was shocked by Williams reaction demanding that John Mack immediately report to headquarters and await further action.

9. Mack had first hand knowledge and experience of past situations of a similar nature. Williams had allowed officers to report to him the next day and had merely counseled the officers on their offenses. John Mack knew that these were white officers, therefore, John Mack was immediately in fear of his position when Williams ordered him immediately to head quarters to await further action.

10. Upon arrival Williams immediately and without reason, except for racial discrimination, suspended John Mack and his police powers and intentionally publicly humiliated him by forcing him to take a breathalyzer and a urine analysis whereas these things were reserved only for officers who were accused of offenses related to drug and alcohol crimes. Once again John Mack recalled in each case they were white police officers and were treated less strictly then he was being treated.

11. The situation was more cruelly put into focus for John Mack because he was under only Administrative Investigation, whereas the white police officers who had been under review by Williams in the past were under Criminal Investigation and he was being treated more severely.

12. Thereafter having improperly suspended John Mack and improperly having removed his police powers, Edward Norris proceeded to develop false testimony against John Mack whereas false testimony was never used against white individuals in similar situations, by Norris.

13. John Mack was held answerable and ultimately terminated as a result of such false testimony before a trial board which Edward Norris had polluted intentionally with highly flamboyant and incendiary comments designed to deny John Mack any semblance of a fair trial. Such actions were never undertaken against any white police officer charged with any administrative or criminal offense before a trial board of the Baltimore City Police Department.

14. These actions were taken against John Mack out of malice and hatred of John Mack because he was an African American, and it was the intent of O'Malley, Norris and Williams to discriminate against him because he was African American and not white.

15. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this Court grant him:

A.) a declaratory judgment that he was victim of employment discrimination by the State of Maryland and the Baltimore City Police Department; and

B.) an order reinstating him as a lieutenant in the Baltimore City Police Department with all back pay and benefits to which he is entitled; and

C.) an order directing the Baltimore City Police Department and the State of Maryland and their agents to cease and desist all acts of discrimination against him immediately; and

  D.) to award him non-economic damages in this case of $200,000; and

  E.) award him punitive damages in this case of $500,000; and

  F.) grant him his attorney's fees in this case; and

  G.) grant him his costs.

COUNT 2

NEGLIGENCE

(STATE OF MARYLAND)

16. John Mack incorporates by reference all the factual allegation of paragraphs 3 through 14 above.

17. The State of Maryland has a duty to supervise its employees to assure that their practices avoid discrimination based on race.

18. The State of Maryland breached the aforesaid duty with reference to Norris and Williams and their treatment of John Mack.

19. As a result of the negligence of the State of Maryland, John Mack has suffered great economic loss that will continue indefinitely into the future, has suffered great pain and mental suffering from time of these incidents to the present and which will continue for some time in to the future and he has had to spend large sums of money to cure himself of injuries caused by the Defendants negligence, some of which may be permanent.

  WHEREFORE, John Mack requests that this Court grant him $1,000,000.00.

COUNT 3

CIVIL RIGHTS

42 USC § 1983

(EDWARD NORRIS)

20. John Mack incorporates by reference all the factual allegation of paragraphs 3 through 13 above.

21. Edward Norris was the Commissioner of the Baltimore City Police Department at all times herein mentioned.

22. As commissioner of the Baltimore City Police Department he was responsible for the proper administration of the Baltimore City Police Department including the administration of the trial board process under the Law Enforcement Officers Bill of Rights.

23. The trial board system is an integral part of the administration of fairness and justness within the Baltimore City Police Department in that an officer of any rank knows that regardless of the charges against him, he is answerable to the trial board free and independent of influence, so that it will make a decision solely on the basis the record be made before it.

24. John Mack's right to a free and unfettered trial board was assured by the Law Enforcement Officers Bill of Rights, Md. Code Ann., act. 27, §. 27 et seg, 1 Law Enforcement Officers' Bill of Rights contains the right to a fair and independent consideration of the evidence against him, which is grounded and protected by due process and protected by the 14th Amendment to the Constitution of the United States.

25. Norris was aware of this right when he intentionally became hyperbolic about the incident involving John Mack and criticized him falsely in the media in an effort to sway the opinion of the Baltimore City Police Department, and potential members of the trial board who would be selected, against John Mack.

26. Norris knew, or had reason to know that the trial board would be selected form the ranks of the Baltimore City Police Department, and he set out to prejudice the possible member of that Board, and in fact did prejudice the members of the board.

27. In May of 2001 at a City Council hearing, Norris stated that John Mack was caught, "…working in a whore house on duty…" and that because of John Mack's actions, "…I don't want him in my department." Norris fails to state when the Baltimore City Police Department became his proprietary property.

28. These comments exceeded Norris's powers as Commissioner and this had to have been issued by him as a private citizen attempting to use the color of his official State position within the Baltimore City Police Department to influence private citizens and the Police Department against John Mack and deprive him of due process. Norris's statements about his proprietary interest in the Baltimore City Police Department and his breach of his duty of impartiality reinforce the nature of his actions as a private citizen under color of State Law, custom or usage.

29. Indeed Norris's remarks received considerable media attention and members of the Police Department who could potentially serve on John Mack's trial board were subject to Norris's remarks and understood them to be commands from their commanding officer to remove John Mack from his Police Department.

30. Potential Police witnesses heard the statements of Norris and their testimony would have had to of been colored by the statements of Norris because he was in fact their commanding officer demanding the ouster of John Mack, while he was supposed to be impartial.

31. The statements of Norris were a clear statement of command. The Police Department is a paramilitary organization and Norris is the head of that organization. It would be highly difficult if not impossible for the members of that organization to divorce themselves from the commands of the commanding officer of the police department who appeared to be speaking in his position as their commanding officer while in fact he was speaking only as a private citizen. This is in fact denial of Mr. Mack's right to due process by a private citizen acting under color of law custom and usage.

32. The actions of Edward Norris were done with actual malice and with the intent solely to harm John Mack.

33. John Mack has suffered great pain and mental suffering from these events to the present and will likely continue to experience this into the future; he has lost wages and benefits from the time of these events until the future time in the future has been greatly injured and has had to spend large sums of money to be cured of these injuries some of which are permanent and will continue to spend large sums in the future, he has had to expend large sums for medical expenses to be cured of

his ills some of which may be permanent, and he has had to spend large sums for council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him from:

    A.)    In compensatory damages $1,000,000; and

    B.)    In punitive damages $2,000,000.

## COUNT 4

### INTERFERENCE WITH CONTRACTUAL RELATIONS

### (EDWARD NORRIS)

34. John Mack incorporates all the factual allegations by reference of paragraphs 3 through 25.

35. Norris knew of the valid contractual relationship between the State of Maryland through the Baltimore City Police Department and John Mack and the legitimate limits of his authority to influence that contract.

36. Nevertheless exceeding the legitimate limits of his authority, in a news based meeting Norris took upon himself to do the aforesaid acts to the extent that at his unlawful insistence the contract was terminated.

37. The clear mandate of public policy in Maryland inherent in the Law Enforcement Officer's Bill of Rights is for trial boards to be free of outside influence, tampering, and abuse.

38. Norris was aware of this clear public policy but out of malice towards John Mack he instigated to terminate John Mack and in fact did terminate his indefinite term employment contract by intentionally exercising his rank as Commissioner of the Baltimore City Police Department to issue repeated statements that John Mack was guilty of misconduct as a Policeman and that Norris as Commissioner of the Baltimore City Police Department wanted John Mack terminated from the Baltimore City Police Department which were actions beyond his powers as Commissioner made without just cause or provocation and were contrary to the clear mandatory public policy concerning the operation of the Baltimore City Police Department trial boards. Norris actions were intentional and designed to harm Mack.

39. Norris was motivated by malice toward John Mack.

40. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him:

    A.)    Compensatory damages of $1,000,000; and

    B.)    Punitive damages of $2,000,000.

## COUNT 5

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (EDWARD NORRIS)

41. John Mack incorporates all the factual allegations of paragraphs 3 through 30 from above.

42. Norris's actions were intentional or reckless.

43. Norris's actions were extreme and outrageous.

44. There was a causal relationship between Norris's actions and John Mack's emotional suffer and pain.

45. John Mack's emotional suffering and pain have severe.

46. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

   WHEREFORE, John Mack request that this courts grant him:

   A.)  $1,000,000 in compensatory damages; and

   B.)  $2,000,000 in punitive damages.

## COUNT 6

### CIVIL RIGHTS

### 42 USC § 1983

### (MARTIN O'MALLEY)

47. John Mack incorporates all the factual allegations of paragraphs 3 through 46 from above.

48. Martin O'Malley is the Mayor of the City of Baltimore.

49. Martin O'Malley (herein after referred to as O'Malley) became determined that he did not want John Mack in the Baltimore City Police Department after he became aware of the false information about him. To this end he commenced a campaign in the media of attacks upon John Mack and statements regarding John Mack's lack of usefulness as a Police Officer in O'Malley's personal view designed to influence the public and the officers of the Baltimore Police Department concerning his abilities and his ability to remain on the police department staff.

50. Martin O'Malley knew or had sufficient reason to know that the trial board that would judge John Mack would ultimately come from the Baltimore City Police Department yet he nevertheless continued the attacks upon John Mack's character as a Police Officer in an effort to influence the possible pool from which the members who would serve on the trial board would come. He

continued these attacks in an effort to negatively influence the possible individual members of the trial board against John Mack.

51. O'Malley knew that John Mack was entitled under federal due process law to a fair, impartial and unbiased trial board under LEOBR statutes that existed in Maryland. Despite this fact he nevertheless continued his barrage of attacks upon John Mack.

52. O'Malley's attempt to terminate John Mack were joined with Norris's attempts to rid himself of John Mack.

53. The actions of O'Malley were beyond those of his office and were the acts of a private citizen, but were made so that the impetus and color of his office would be felt by the remarks. These malicious acts bore fruit when the trial board brought back a recommendation that John Mack was to be terminated.

54. Thus O'Malley denied to John Mack his rights to due process under the color of State Law.

55. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

   WHEREFORE, John Mack request that this court award him:

   A.)   $1,000,000 in compensatory damages; and

   B.)   $2,000,000 in punitive damages.


COUNT 7

INTERFERENCE WITH CONTRACT RIGHTS

(MARTIN O'MALLEY)

56. John Mack incorporates all the factual allegations of paragraphs 3 through 55 from above.

57. O'Malley was aware of a valid contractual relationship between John Mack and the State of Maryland and the Baltimore City Police Department.

58. O'Malley was aware that his efforts to terminate the contract between John Mack and the State of Maryland and the Baltimore City Police Department were in fact undue, unprivileged and unlawful.

59. O'Malley was aware that when the contract between John Mack, and the Mayor and the State of Maryland and the Baltimore City Police Department was terminated as a result of the influence that he exerted upon the trial board, he had accomplished his end by an unlawful means.

60. O'Malley accomplished his end by means of actual malice and an attempt to actually and truly harm John Mack.

61. The actions of O'Malley were against the clear public mandate of policy that trial boards and CEOBR be free from political influence and that they base their decision solely on their records.

62. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court award him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.


## COUNT 8

## CONSPIRACY

### (EDWARD NORRIS, MARTIN O'MALLEY, ANTONIO WILLIAMS)

63. John Mack incorporates all the factual allegations of paragraphs 3 through 62 from above.

64. Norris, O'Malley and Williams conspired amongst themselves to perform the act of terminating John Mack from his position as a lieutenant in the Baltimore City Police Department by the unlawful means of securing false testimony and unlawfully influencing the Baltimore City Police Department, the trial board pool and the trial board and doing so in secret so as to deceive John Mack and the legitimate mechanisms of the Baltimore City Police Department, the Government of the Mayor and City Council of Baltimore, and the people of Baltimore City so as to terminate John Mack in a manner that would call his service into question and destroy him emotionally, financially and socially within the Baltimore City Community.

65. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.

COUNT 9

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(MARTIN O'MALLEY)

66. John Mack incorporates all the factual allegations of paragraphs 3 through 65.

67. O'Malley's actions were intentional and reckless.

68. O'Malley's actions were extreme and outrageous.

69. There is a causal relationship between O'Malley's actions and John Mack's emotional suffering and pain.

70. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.


COUNT 10

CIVIL RIGHTS

42 USC § 1983

(MAYOR AND CITY COUNCIL OF BALTIMORE)

71. John Mack incorporates all the factual allegations of paragraphs 3 through 70.

72. O'Malley was at all times mentioned above the agent of the Mayor and City Council of Baltimore and as its agent his actions were ratified by it.

73. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack requests that this Court grant him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.

COUNT 11

CIVIL RIGHTS

42 USC § 1983

(ANTONIO WILLIAMS)

74. John Mack incorporates all the factual allegations of paragraphs 3 through 73.

75. Antonio Williams (hereinafter referred to as Williams) at all times here in mentioned was a Major in the Baltimore City Police Department and John Mack's supervisor.

76. The rules and regulations of the Baltimore City Police Department which Williams supervises the enforcement of over John Mack have the force and effect of law and must be enforced with due process of law under the Constitution of the United States.

77. The acts of Williams toward John Mack described herein were not authorized to his position or any position within the Baltimore City Police Department or the State of Maryland, and in fact were unlawful, were in fact acts of a private citizen discriminating against a police officer under color of State Law by reason of his state office and his racially disparate enforcement of Baltimore City Police Department rules and regulations.  Denying John Mack due process in the administration of the rules and regulations of the Baltimore Police Department which denied him due process under color of the state law, custom and usage.

78. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.

COUNT 12

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(ANTONIO WILLIAMS)

79. John Mack incorporates all the factual allegations of paragraphs 3 through 78.

80. Williams' actions were intentional and reckless.

81. Williams' actions were extreme and outrageous.

82. There is a causal connection between Williams' actions and John Mack's suffering and pain.

83. John Mack's suffering was extreme.

84. The actions of Williams were malicious.

85. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack requests that this Court grant him:

    A.)    $1,000,000 in compensatory damages; and

    B.)    $2,000,000 in punitive damages.

## COUNT 13
## WRONGFUL TERMINATION
## (STATE OF MARYLAND, BALTIMORE CITY POLICE DEPARTMENT)

86. John Mack incorporates all the factual allegations of paragraphs 3 through 85.

87. John Mack was employed by the State of Maryland and the Baltimore City Police Department as a Police Lieutenant on an indefinite contract.

88. His employment contract was terminated by the Mayor and City Council of Baltimore through the use of procedures state above which violated John Mack's rights to due process and a fair hearing before a trial board of Baltimore City Police Department under the Law Enforcement Officer's Bill of Rights, the Declaration of Rights of the Constitution of the State of Maryland and the Constitution of the United States, which constitute the clear public policy of Maryland.

89. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack requests that this Court grant him:

    A.)    $1,000,000 in compensatory damages; and

    B.)    $2,000,000 in punitive damages.

COUNT 14

CIVIL RIGHTS

42 USC § 1981

(THE STATE OF MARYLAND)

90. John Mack incorporates all the factual allegations of paragraphs 3 through 89.

91. John Mack is an African-American, Black male of the United States of America.

92. John Mack had a contract of employment with the State of Maryland which that government allowed its agents responsible for enforcing that contract, Norris and Williams, to enforce it in a manner less advantageous that then informed other and similar contracts of employment for white men.

93. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

   WHEREFORE, John Mack request that this court grant him:

   A.)   $1,000,000 in compensatory damages; and

   B.)   $2,000,000 in punitive damages.

COUNT 15

CIVIL RIGHTS

42 USC § 1981

(BALTIMORE CITY POLICE DEPARTMENT)

94. John Mack incorporates all the factual allegations of paragraphs 3 through 93.

95. John Mack had a contract of employment with the Baltimore City Police Department, which allowed its agents responsible for enforcing that contract, Norris and Williams, to enforce it in a manner less advantageous that then informed other and similar contracts of employment for white men.

96. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

   WHEREFORE, John Mack request that this court grant him:

    A.)    $1,000,000 in compensatory damages; and

    B.)    $2,000,000 in punitive damages.


## COUNT 16

## CIVIL RIGHTS

## AGENCY

## (EDWARD NORRIS, ANTONIO WILLIAMS)

97. John Mack incorporates all the factual allegations of paragraphs 3 through 96.

98. Norris and Williams were agents of the State of Maryland at all times mentioned herein and their acts herein related were ratified by the State of Maryland.

99. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

    WHEREFORE, John Mack request that this court grant him:

    A.)    $1,000,000 in compensatory damages; and

    B.)    $2,000,000 in punitive damages.


## COUNT 17

## CIVIL RIGHTS

## AGENCY

## (EDWARD NORRIS, ANTONIO WILLIAMS)

100. John Mack incorporates all the factual allegations of paragraphs 3 through 99.

101. Norris and Williams were agents of the Baltimore City Police Department at all times mentioned herein and their acts herein related were ratified by the Baltimore City Police Department.

102. As a result of these actions John Mack suffered great financial loss, great pain and mental suffering from the past to the present and likely to continue into the future, lost wages from the time of these events to the present and likely into the future and great sums for medical care to be cured of his illness some of which may be permanent and he has had to expend large sums on council fees to protect his rights.

WHEREFORE, John Mack request that this court grant him:

A.) $1,000,000 in compensatory damages; and

B.) $2,000,000 in punitive damages.

## DEMAND FOR JURY TRIAL

John Mack by Frederic M. Brandes his attorney, demands that this case be heard by a jury.

Frederic M. Brandes
2126 Folkstone Road
Timonium, Maryland 21093
(410) 561-0290

## CERTIFICATION OF SERVICE

I, Frederic M. Brandes, certify that on this 17th day of April 2003, I mailed a copy of the foregoing to Howard Hoffman, Baltimore City Police Department, 242 W 29th Street, Baltimore, Maryland 21211 and Freda Lukov Kleinman, 100 Holliday Street, Baltimore, Maryland 21202.

Frederic M. Brandes