IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN M. MACK                          *

    PLAINTIFFS                       *

    V.                               *    CASE NO. JFM 02-3089

EDWARD NORRIS,
BALTIMORE POLICE DEPARTMENT,   *
    ET AL.
                                      *
    DEFENDANTS
_____/

MEMORANDUM IN SUPPORT OF
DEFENDANT NORRIS' MOTION TO DISMISS/STAY AMENDED COMPLAINT

Former Baltimore Police Commissioner, Edward Norris ("Defendant Norris"), moves pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss the Complaint of John M. Mack ("Plaintiff"). In support thereof, Defendant Norris reincorporates and repeats herein (to the extent applicable) Defendant Norris' arguments to Plaintiff's initial Complaint, and in addition thereto, states as follows:

I.    Facts

On September 18, 2002, Plaintiff filed a *pro se* lawsuit against Baltimore Police Department (BPD) Commissioner Edward Norris, BPD Major Antonio Williams (Williams), and the Mayor & City Council of Baltimore City (M&CC). This, however, was not the first legal proceeding in which Plaintiff has been involved in, alleging that Mr. Norris made false accusations against him that damaged his career

with the BPD.  There are, in fact, two other cases in which Plaintiff has alleged damages arising from Defendant Norris' comments, or has alleged that the administrative mechanism relied upon to terminate his employment (known as a "trial board"), was unfairly prejudiced by Defendant Norris' comments.

The first case was a lawsuit brought by Plaintiff against Defendant Norris on May 25, 2001 in the Circuit Court for Baltimore City (case # 24-C-01-002607), alleging slander.  (Exh. 1). Plaintiff's case was dismissed.  (Exh. 2)

The second case was an appeal from his dismissal to the Circuit Court for Baltimore City (case # 24-C-01-005972), in which the Circuit Court upheld Plaintiff's termination from the BPD under Maryland's Law Enforcement Officer's Bill of Rights ("LEOBR"), MD. ANN. CODE ART. 27, § 727 et seq. As in the case at bar, in that case, Plaintiff argued that his due process rights to a fair and impartial hearing were violated by Defendant Norris' comments.[1]  The Circuit Court rejected Plaintiff's argument, and Plaintiff has now noted an appeal to the Maryland Court of Special Appeals.  (Exh. 4).

On January 23, 2003, Defendant Norris filed a motion to dismiss the instant lawsuit, based on FRCP 12(b)(6).  Defendants M&CC and Williams also sought to dismiss Plaintiff's case.

---

[1] In fact, the cases are so similar that much of Plaintiff's pro se complaint was nothing more than a verbatim repetition of the allegations he made in the Circuit Court appeal.  (Exh. 3).

While these motions were pending, on February 27, 2003, Fredrick Brandes, Esq. requested that he be provided until April 3, 2003 to respond.    Your Honor granted that request on March 5, 2003, and Ordered that the Plaintiff had until April 3, 2003 to respond.

On April 22, 2003, Plaintiff's counsel filed a seventeen (17) count Amended Complaint, adding as party Defendants the State of Maryland, the Baltimore City Police Department (BPD), and Mayor Martin O'Malley.    Although it is not clear from the filing whether Plaintiff's counsel has withdrawn the Plaintiff's original pro se allegations under Title VII against Defendant Norris, it can be presumed that he has added and not deleted any claims.[2]

The counts against Defendant Norris, in addition to the Title VII allegation previously leveled at Defendant Norris in Plaintiff's original Complaint, include a § 1983 allegation that Defendant Norris violated the due process rights of the Plaintiff by falsely criticizing the Plaintiff, thereby prejudicing the administrative procedures relied upon to terminate the Plaintiff's employment (Count 3).    Other counts against Defendant Norris include Interference with Contractual Relations (Count 4), Intentional Infliction of Emotional Distress (Count 5), Conspiracy (Count 8), and two counts captioned "Civil Rights, Agency" (Counts 16 and 17).

---

[2] This uncertainty is caused by Plaintiff's counsel failure to comply with Local Rule 103(6)(c).

## II.   Standard of Review

When ruling on a motion to dismiss under FRCP 12(b)(6), courts must accept all well-plead allegations of the complaint as true. Curtis v. Pracht, 202 F. Supp.2d 406, 411-12 (D. Md. 2002). The court need not, however, accept unsupported legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. Id. at 412.

## III. Argument

As an initial matter, all of the Plaintiff's allegations against Defendant Norris arise from statements he made after he was called before a City Council hearing. Accordingly, Defendant Norris enjoys absolute immunity to all causes of action based on such allegations, on the basis of legislative immunity.

Alternatively, Plaintiff's § 1983 count against Defendant Norris (count 3) should be dismissed on the basis of qualified immunity, or stayed on abstention grounds.

Moreover, Plaintiff's supplemental state common law claims fail to state a cause of action upon which relief may be granted, and are barred by the Local Government Tort Claims Act, MD. CODE ANN., CTS. & JUD. PROC. ART. § 5-301 et seq. Plaintiff's claims of intentional infliction of emotional distress and interference with economic relations are barred by the doctrine of res judicata.

Finally, Plaintiff's allegations of "Civil Rights, Agency," presumably made pursuant to § 1981, must fail as a matter of law.

## A. Plaintiff's Complaint Against Defendant Norris is Barred by the Doctrine of Legislative Immunity.

Central to the Plaintiff's Complaint against Defendant Norris is that Plaintiff failed to receive a fair trial board hearing, after Defendant Norris criticized the Plaintiff before a City Council hearing. Plaintiff makes the following allegations:

27. In May of 2001 at a City Council hearing, Norris stated that John Mack was caught "… working in a whore house on duty …" and that because of John Mack's actions, "… I don't want him in my department. …

28. …

29. Indeed Norris's remarks received considerable media attention and members of the Police Department who could potentially serve on John Mack's trial board were subject to Norris's remarks and understood them to be commands from their commanding officer to remove John Mack from his Police Department.

(Amended Comp. ¶¶ 27, 29).

However, Plaintiff cannot maintain an action against Defendant Norris based on these allegations, because Defendant Norris – as an official participant in legislative proceedings - enjoys absolute immunity from suit.

Maryland law recognizes that official participants in legislative proceedings enjoy an absolute immunity from suit.[3] Sherrard v. Hull, 53 Md. App. 553, 558 (1983) (collecting cases); see also Gohari v. Darvish, 363 Md. 42, 55 n.13 (2001). This privilege is known as a legislative privilege, id., and it is not confined to matters of defamation. See Walker v. D'Alesandro, 212 Md. 163, 169 (1956) ("Privilege is not confined in the law of torts to matters of defamation, though it may have many applications in that particular field; and it may be either absolute or qualified.").

"The scope of the legislative privilege for a witness has been 'generally held to be subject to the same rules or privilege as is similar in courts of justice. If the testimony is material to the inquiry or responsive to a question asked by the tribunal, it is generally held to be absolutely privileged..' " Sherrard, 53 Md. App. 558 at n.2 (quotation omitted); see also Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"). Of course, statements made in the course of judicial proceedings are absolutely privileged, based upon sound considerations of public policy and the need for participants to

---

[3] Although Maryland courts have recognized the legislative privilege, they have not had an occasion to apply it. Sherrard, 53 Md. App. at 558 ("… no Maryland case has ever squarely addressed the contours of the privilege in a particular factual situation.").

speak freely.   Odyniec et al. v. Schneider, 322 md. 520, 526-28 (1991).   Absolute privilege still applies, even if the purpose or motive was malicious, or the speaker knew the statement was false, or the conduct was otherwise unreasonable.   Id. at 527.

Defendant   Norris'   statements   fall   squarely   within   the legislative privilege, as they were material and relevant to a City Council hearing into his administration of the Baltimore Police Department.   Defendant Norris' statements were made to the Baltimore City Council pursuant to a council resolution inviting the Commissioner to explain his recent firings of four members of his command staff.   Baltimore City Council Bill 01-0449, introduced and adopted May 14, 2001, states as follows:

> For purposes of requesting and the Police Commissioner to address the Baltimore City Council concerning recent personnel actions in the top ranks of the Baltimore Police Department and the impact of these actions in light of the Department's history of unfair and discriminatory personnel practices … Now, therefore, be it resolved by the City Council of Baltimore, that the Police Commissioner is requested to address the Baltimore City Council concerning recent personnel actions in the top ranks of the Baltimore Police Department…

Art. III § 9 of the BALTIMORE CITY CHARTER states that the heads of departments shall appear before the City Council if requested by a majority vote of its members.   Defendant Norris, as Police Commissioner, was appointed by the Mayor, subject to confirmation by a majority vote of the City Council and would fall within the purview of Article III § 9 of the City Charter.   See CODE OF PUBLIC LOCAL LAWS OF

BALTIMORE CITY, § 16-5.   Consequently, the City Council hearing was legally authorized and convened within the Council's jurisdiction. As such, the legislative proceeding was being legitimately conducted within the City Council's jurisdiction.

Additionally, the context of Defendant Norris' comments were in response to questioning by the City Council.   At the hearing, the City Council's questioning focused nearly exclusively on the reasons behind the dismissals of Barry W. Powell, Former Deputy Commissioner of Operations, and Former Col. James Hawkins, Chief of the Criminal Investigation Division.   Defendant Norris' alleged statements were made in direct response to the Council's questions about the dismissal of Powell and Hawkins, wherein Defendant Norris explained that part of the reason why Powell and Hawkins were terminated was their opposition to the commencement of a disciplinary investigation into the discovery of the Plaintiff at Ronnie's Westside Gallery. (See Amended Comp. ¶ 7).   Again, Defendant Norris' statements directly addressed the subject matter of the City Council hearing: the rationale for firing Powell and Hawkins.

Accordingly, Defendant Norris' statements fall within the legislative privilege, and cannot serve as the basis for the claims asserted by the Plaintiff in the instant case, including Plaintiff's § 1983 action against Defendant Norris.   See Bogan, 523 U.S. at 49 (holding legislative privilege applicable to § 1983 actions).

**B. Plaintiff's § 1983 Allegation Should Be Dismissed on the Basis
of Qualified Immunity, or Stayed on Abstention Grounds.**

With respect to Plaintiff's allegations that his due process
rights were violated insofar as his trial board was tainted by
Defendant Norris' public statements, such a due process right was not
"clearly established," and thus, Defendant Norris is entitled to
qualified immunity.

In the alternative, Plaintiff's § 1983 allegation should be
stayed on abstention grounds, as the same issue was presented to the
Circuit Court for Baltimore City in the appeal of his termination
under the LEOBR, and Plaintiff has noted an appeal with the Maryland
Court of Special Appeals.[4]

**1. Defendant Norris' Comments, Even If True, Did Not Violate A
Clearly Established Right of the Plaintiff to a Fair and
Impartial Trial Board Hearing.**

Under § 1983, a government official is immune to damage awards
where a reasonable official could believe (the test is objective),
albeit mistakenly, that his conduct did not violate a constitutional
right of the plaintiff.   Harlow v. Fitzgerald, 457 U.S. 800, 818-19
(1982).   Immunity exists even where the abstract "right" invoked by
the plaintiff is well-established, so long as the official could have
reasonably believed "on the facts" that no violation existed.   See
Dirrane v. The Brookline Police Department, et al., 315 F.3d 65 (1st

---

[4] See Exh. 4.

Cir. 2002). The issue of immunity is a pure question of law. DiMeglio v. Haines, 45 F.3d 790, 794-95 (4th Cir. 1995).

In determining whether a Police Commissioner has qualified immunity from a § 1983, the Fourth Circuit recently instructed courts to use a two-pronged analysis. First, courts must determine whether a plaintiff has alleged facts setting forth a valid claim for a deprivation of a constitutional right. Williams et al. v. Hansen et al., No. 02-1573, slip op. pg. 7 (4th Cir. Apr. 22, 2003). Then, if a plaintiff's claims survive this "threshold review," courts must determine whether the right the plaintiff advances was "clearly established" at the time of its alleged violation so that a reasonable person would have known of the right. Id. at 7-8 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If a reasonable officer could have believed that his conduct was lawful, then the officer enjoys immunity. Id. at 8.

In this case, Plaintiff alleges that Defendant Norris issued a "clear statement of command," and that his comments at a May 2001 City Council hearing "influenced private citizens and the Police Department against John Mack and deprive[d] him of due process." (Amended Comp. ¶ 27, 28, and 31). The Plaintiff further alleges that Defendant Norris set out to prejudice the possible members of a trial board, and that he "in fact did prejudice members of the board." (Amended Comp. ¶ 26).

Assuming *arguendo* that Plaintiff's claim satisfies the initial inquiry that he has a valid claim for a deprivation of a constitutional right,[5] Plaintiff's allegations that his right to an impartial trial board has been unfairly prejudiced by Defendant Norris' comments does not involve a constitutional right which is "clearly established."

In order to be a "clearly established" right, the " 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, … but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' "  See <u>Williams</u>, slip op. at 16 (<u>quoting</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-40 (1987)).

While it is true that cases need not be identical for purposes of determining whether a right is "clearly established," <u>see</u> <u>Williams</u>, slip op. at 18, a review of applicable case law suggests a

---

[5] The Plaintiff's due process claim is, at best, dubious.  Maryland courts have held that the procedural safeguards afforded by the LEOBR "do not operate to confer  a property right in an officer's continued employment … ."  <u>Carroll v. City of Westminster</u>, 52 F. Supp.2d 546, 562 (D. Md. 1999) (citing cases).  Like the allegations here that Defendant Norris "was supposed to be impartial," like the bald allegations that a police department "failed to provide a trial board before which [an officer] could defend these charges," fail to state a cause of action for a due process violation brought pursuant to § 1983.  <u>See</u> <u>Elliott v. Kupferman</u>, 58 Md. App. 510, 525 (1984).  But even if the Plaintiff had a property right in his employment, the pre and post termination procedures that state law provides the Plaintiff satisfy due process.  <u>Id.</u> at 562 n.4. (citing <u>Cleveland Bd of Educ. v. Loudermill</u>, 470 U.S. 532 (1985).

total absence of cases that suggest that the Plaintiff's claim is
"clearly established."  In fact, undersigned counsel has been able to
find only one case decided prior to Defendant Norris' comments that
involves similar facts, and that case would suggest that Defendant
Norris' conduct was constitutionally permissible.[6]

In Smith-Berch, Inc. v. Baltimore Cnty., 68 F.Supp.2d 602, 628-
29 (D. Ct. Md.1999), a zoning variance was denied to a methadone
clinic, and the prospective clinic operators sued alleging, inter
alia, a violation of the Due Process Clause of the Fourteenth
Amendment.  Id. at 602, 615-16.  Among other things, the clinic
operators argued that the zoning commissioner did not conduct a fair
hearing because the zoning commissioner was biased towards the
clinic.  Id. at 628.  As evidence of the bias of the zoning
commissioner, the clinic operators argued that the zoning
commissioner was a political appointee of the County Executive, and
the County Executive had been outspoken in his opposition to the
proposed location of the methadone clinic.  Like Plaintiff's
"command" argument,[7] the notion that the County Executive's comments
impliedly threatened the "job security" of the zoning commissioner
were rejected.  According to the Court, the mere fact that the zoning

---

[6] "In conducting the immunity inquiry, the Court looks to settled law at the time of
the allegedly unconstitutional act."  Carroll v. City of Westminster, 52 F. Supp.2d
546, 564-64 (D. Md. 1999).
[7] "It would be highly difficult if not impossible for the members [of the BPD] to
divorce themselves from the commands of [Defendant Norris]."  (Amended Comp. ¶ 31).

commissioner was aware that county officials opposed the
establishment of the methadone clinic "in no way proves that [the
commissioner] himself was also opposed to such clinics." Id.
Indeed, the U.S. Supreme Court itself has indicated that a biased
administrative hearing does not occur, such that would raise due
process concerns, merely due to the prior public comments of agency
officials before the convening of an administrative hearing. See
Withrow et al. v. Larkin, 421 U.S. 35, 48 (1975) (reviewing cases,
and noting that the Court rejected such a claim in its decision in
FTC v. Cement Institute, 333 U.S. 683 (1948)).

        Under the circumstances, then, it cannot be reasonably held that
Defendant Norris should have known that his speech before the City
Council was unlawful. As stated in Williams, "a reasonable person in
[the Police Commissioner's] position was entitled to obtain his legal
guidance from law books rather than a crystal ball." Williams, slip
op. at 19.  In this case, the law which was settled at the time of
Defendant  Norris'  comments  suggests  that  even  assuming  that
Plaintiff's due process rights were violated, such rights were
certainly not clearly established.  Defendant Norris is therefore
entitled to qualified immunity.  Cf. Williams, slip op. at 14
("Indeed, it would be remarkable to hold that a reasonable person,
here a chief of police, should have known more constitutional law

than United States Circuit Judges and that because he did not he should be subject to the imposition of monetary damages.").

> ## 2. In the Alternative, If Defendant Norris Is Not Protected By Qualified Immunity, This Court Should Abstain From Deciding Plaintiff's § 1983 Action, Based on the Principles Set Forth in *Colorado River*.

This Court should abstain from considering the merits of Plaintiff's § 1983 action against Defendant Norris, because it is identical to the argument raised and rejected in the Circuit Court for Baltimore City, and an appeal in that case is now pending with the Maryland Court of Special Appeals.

Thus, this case meets the "exceptional circumstances test" for abstention first enunciated in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976). A district court may abstain when principles of "[wise] judicial administration … conservation of judicial resources and comprehensive disposition of litigation" are implicated. <u>Id.</u> at 817.

To be sure, the existence of proceedings in state court do not preclude parallel proceedings in federal court. <u>See</u> <u>Automated Systems and Programming, Inc. v. Cross</u>, Case No. PJM 01-cv-1531, 2001 U.S. Dist. LEXIS 21381, * 12 (Nov. 9, 2001). The factors to consider in determining whether "exceptional circumstances" exist include the following: (a) the assumption of by either court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the desire

to avoid piecemeal litigation; (d) the order in which courts obtained jurisdiction; (e) the source of applicable law.  See id. at 12-13. The decision whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a balancing of the important factors as they apply in a given case.  See id.

Here, the paramount consideration is the avoidance of piecemeal litigation.[8]  Like the plaintiff's claims in Cross, Plaintiff's claim for violating his due process rights to a fair and impartial hearing has already been litigated before the Circuit Court for Baltimore City, and awaits resolution on appeal to the Maryland Court of Special Appeals.  Id. at *15-16. As in Cross, "[t]he present suit is thus not merely another piece of the litigation; it is essentially the same piece that the parties are contesting in the state proceedings."  Id. at *16.

Another factor that "militates strongly in favor of deferring to the state proceeding," is the order in which the courts obtained state and federal jurisdiction.  See id. Here, of course, Plaintiff filed and noticed his appeals with the Circuit Court for Baltimore City and the Maryland Court of Special Appeals, before he ever filed this § 1983.

---

[8] It does not appear that the first two factors, i.e., "assumption by either court of jurisdiction over property" or the "inconvenience of the federal forum," are applicable to this case.

Finally, the last factor is "the source of applicable law." Here, although the allegation is that Plaintiff's due process rights were violated, the administrative hearing which recommended the termination of Plaintiff's employment was convened pursuant to the LEOBR. When a federal court would deprive state courts of overseeing the disposition of constitutional issues which arise in civil cases before them, the Supreme Court has indicated that "this consideration" is "of some importance because it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions." Cf. Huffman et al. v. Pursue, Ltd., 420 U.S. 592, 609 (1975).

Ultimately, in this case " 'parallel state litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.' " Cross, 2001 U.S. Dist. LEXIS 21381, *18. Accordingly, Plaintiff's § 1983 count against Defendant Norris should be stayed pending his appeal, if it s not dismissed on the basis of both of the immunities listed above.

C. Section 1983 Is The Exclusive Remedy For Civil Right Violations Against State Officials, And As Such, Plaintiff's § 1981 Allegations Against Defendant Norris Must Fail As A Matter Of Law.

Although slightly unclear, Plaintiff alleges in Count 16 and 17 that Defendant Norris is liable as an agent for the Civil Rights

violations of the State of Maryland and the BPD. These Counts immediately follow Counts 14 and 15, which allege violations of the 42 U.S.C. § 1981, by both the State of Maryland and BPD. Defendant Norris therefore interprets Counts 16 and 17 to allege § 1981 violations committed by Defendant Norris.

However, § 1983 is the exclusive remedy for civil right violations against state officials, and as such, Plaintiff's § 1981 allegations against Defendant Norris must fail as a matter of law. See Oden v. Oktibbeha Cnty., 246 F.3d 458, 463(5th Cir. 2001) ("Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law."); Burbank v. Office of the AG of Conn., 240 F. Supp.2d 167, 173-75 (D. Ct. 2003); see also Dennis v. Cnty of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("… when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.' "). Accordingly, to the extent that Counts 16 and 17 are plead under § 1981, they must be dismissed.

### D. Plaintiff's Supplemental State Common Law Causes of Action Should Be Dismissed As A Matter of Law.

Plaintiff's supplemental state common law causes of action should be dismissed because the Plaintiff failed to provide timely notice in accordance with the Local Government Tort Claims Act, the

claims fail to state a cause of action, and the claims are res judicata.

### 1. Plaintiff Failed to Provide Timely Notice in Accordance with the Local Government Tort Claims Act.

Plaintiff has failed to provide adequate notice to the County under the Local Government Tort Claims Act, MD. CODE ANN., CTS. & JUD. PROC. ART. § 5-301 et seq. (LGTCA). Under the LGTCA, a person may not bring an action for unliquidated damages against a Maryland local government or its employees unless he has satisfied the notice requirements in MD. CODE ANN., CTS. & JUD. PROC. ART. § 5-304(a). See Gonzalez v. Cecil County, Md et al., 221 F. Supp.2d 611, 614 (D. Md. 2002). Under the portion of the statute applicable to Baltimore City and its employees, notice must be given in person or by certified mail, to the City Solicitor for Baltimore City. Id. § 5-304(b). The notice must be in writing, and must state the time, place, and cause of the injuries. Id. § 5-304(c). "This notice is a 'condition precedent to the right to maintain an action for damages and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action.' " Gonzalez, 221 F. Supp.2d at 614 (quoting Curtis v. Pracht, 202 F. Supp.2d 406 (D. Md. 2002). The notice provision of the LGTCA " 'applies to all torts without distinction, including intentional and constitutional torts.' " Curtis, 202 F. Supp.2d at 414.

In the present case, the Plaintiff has not alleged as part of his complaint that he has complied with the LGTCA. Thus, there has been no demonstration that notice was given. The LGTCA allows a court to entertain an action although no notice was given, if a plaintiff can show good cause for his failure to comply with the LGTCA and if the Defendant has not been prejudiced by the lack of compliance. MD. CODE ANN., CTS. & JUD. PROC. ART. § 5-304(c). Plaintiff has failed to allege any facts to show good cause for his failure to comply with § 5-304. Therefore, an action cannot be maintained. ·

## 2. Plaintiff's Claim of Interference with Contractual Relations Fails to State a Claim.

Recovery for intentional interference with a contractual relationship is barred when a Plaintiff seeks to recover against a fellow employee who is acting within the scope of his or her employment. Clark v. Dep't of Pub. Safety and Corr. Serv., Civ. No. JFM-02-2293, 2003 U.S. Dist. LEXIS 2923, *9 (D. Md. Feb. 21, 2003). In order to recover against a fellow employee, an employee must allege that the defendant employee "acted maliciously for his own motives and beyond the scope of his authority without the intent to further the interests of the employer." Id.

Plaintiff has alleged that Defendant Norris' statements were made in May of 2001 at a City Council hearing. (Amended Comp. ¶ 27). Plaintiff has not alleged that Defendant Norris was acting without

the intent to further the interests of the BPD. Accordingly,
Plaintiff's claim for intentional interference with contractual
relations should be dismissed.

### 3. Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails to State a Claim.

To allege a prima facie case of intentional infliction of
emotional distress, a plaintiff must show: (1) the conduct is
intentional or reckless; (2) the conduct is extreme and outrageous;
(3) there is a casual connection between the wrongful conduct and the
emotional distress; and (4) the emotional distress is severe. Clark,
2003 U.S. Dist. LEXIS 2923, at *11.

Plaintiff has failed to allege the fourth element – severe
emotional distress. See id. "Emotional distress is severe when 'no
reasonable man could be expected to endure it.' " Id. (citations
omitted). In Clark, the Plaintiff alleged that based on harassment
at work, he had suffered anxiety attacks, has had trouble sleeping
and eating, suffered low self-esteem, and was forced to seek
counseling. Clark, 2003 U.S. Dist. LEXIS 2923, at *11. The
Plaintiff's claim, however, was dismissed because he did not allege
that the harassment disrupted his "ability to function on a daily
basis." Clark, 2003 U.S. Dist. LEXIS 2923, at *12-13; see also Solis
v. P.G. Cnty et al., 153 F.Supp.2d 793, 804 (D.Ct. Md. 2001)
(Dismissing an intentional infliction of emotional distress claim,

noting that that "[t]here is no evidence that Mr. Solis cannot resume his normal life activities since the attack."). Plaintiff merely contends that his "emotional suffering and pain have severe (sic)." (Amended Comp. ¶ 45). Accordingly, Plaintiff's claim for intentional infliction of emotional distress (count 5) should be dismissed.

### 4. Plaintiff's Claims are Barred by the Doctrine of Res Judicata.

Alternatively, even if Plaintiff's supplemental claims of intentional interference with contractual relations and intentional infliction of emotional distress state a cause of action, these claims are res judicata by virtue of the dismissal of Plaintiff's first suit against Defendant Norris for slander (case # 24-C-01-002607). Res judicata is intended to prevent the multiplicity of litigation and to avoid the vexation, costs, and expenses incident to more than one suit on the same cause of action. Jones v. Speed, 320 Md. 249, 260 (1990). Under Maryland law, in order to apply res judicata, three elements must be applicable: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier case; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there was a final judgment on the merits. Colandrea v. Wilde Lake Community Assoc., Inc., 361 Md. 371, 392 (2000). A judgment between the same parties and their privies is a final bar to any

other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit.* Id. (italics in original). To avoid the vagaries of res judicata's preclusive effect, a party must assert all the legal theories he wishes to in his initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata. Id. For purposes of res judicata, whether claims are the same is determined by application of the "transaction test." Chesley v. Goldstein & Baron, Chtd. et al., 145 Md. App. 605, 622 (2002). Under the transactions test, a claim includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose. Id.

All of the elements of res judicata are satisfied in this case. Plaintiff could have asserted against Defendant Norris the legal theories of intentional infliction of emotional distress and intentional interference with contractual relations in the suit for slander (case # 24-C-01-002607), but he did not. Both of these claims arose from the same transaction (i.e., Defendant Norris' comments before the City Council). Accordingly, it stands to reason that Plaintiff is precluded from litigating these claims, as these claims are barred by the doctrine of res judicata.

**5. Plaintiff's Allegation for Conspiracy Fails to State a Cause of Action.**

Maryland law does not recognize an independent cause of action for civil conspiracy. <u>Clark</u>, 2003 U.S. Dist. LEXIS 2923, at *7. Rather, a " 'defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort.' " <u>Id.</u> (citation omitted). Because the Plaintiff has failed to state a claim for any substantive torts, his state law claim for civil conspiracy must fail. <u>See id.</u>

**IV. Conclusion**

Even after amending his Complaint and filing beyond the time permitted by the Court, Plaintiff once again totally and completely fails to state a claim upon which relief may be granted. Defendant Norris prays that this Court dismiss this Case.

Respectfully submitted,

Peter Saar, Esq., Bar # 26666
Deputy Legal Counsel

Howard B. Hoffman, Esq., Bar # 25965
Associate Solicitor
Office of Legal Affairs
Baltimore Police Department
242 W. 29th Street
Baltimore, Maryland 21211
Telephone: (410) 396-2496
Facsimile:  (410) 396-2126
*Attorneys for Former Baltimore Police Department Commissioner Edward Norris*

I hereby certify that on this 1st day of May, 2003, a copy of
Memorandum in Support of Defendant Norris' Motion to Dismiss/Stay was
filed in accordance with the Electronic Filing Requirements and
Procedures as established by the U.S. District Court for the District
of Maryland, with a paper copy sent via U.S. regular mail, postage
paid, to the following:

J. Joseph Curran
Attorney General
200 St. Paul Street
Baltimore, MD 21202
*Attorney General for
the State of Maryland*

Howard B. Hoffman