

IN THE CIRCUIT COURT FOR BALTIMORE CITY     *

PETITION OF     John Mack     *
2350 McCulloh Street
Baltimore, MD 21217     *

FOR JUDICIAL REVIEW OF THE DECISION OF THE     *     CIVIL
ACTION

Baltimore Police Department     *
601 E. Fayette Street
Baltimore  MD 21202     *     No.: 24-C-01-005972

IN THE CASE OF Baltimore Police Department     *
v.
John Mack     *

Case No.:     01-LAD-057     *

*

*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM IN SUPPORT OF REQUEST FOR JUDICIAL REVIEW

Petitioner John Mack, by his attorneys, Michael E. Davey and Schlachman, Belsky &

Weiner, P.A. files this Memorandum in Support of Request for Judicial Review.

### FACTS

In early March, 2001, Lieutenant John Mack, a 17 year member of the Baltimore

Police Department, injured his knee while off duty.  Lieutenant Mack was assigned to the

Criminal Investigation Division/ Northeast District.  Lieutenant Mack continued to work in a

limited capacity at the Northeast District.  Lieutenant Mack completed his administrative

duties, however, he was unable to perform the physical tasks of a full duty officer.

Lieutenant Mack was scheduled to work a 6 P.M. to 2 A.M. shift the weekend of

March 30, 31 and April 1, 2001.  Lieutenant Mack believed that his supervisor, Major

Williams, knew he was injured and was not going to work the scheduled weekend.

On April 1, 2001, at approximately 1:30 A.M., Lieutenant John Mack arrived at Ronnie's West Side Gallery/Lounge to pick up his female friend. There was a private party taking place at the lounge at that time. Lieutenant Mack entered the lounge, sat down and waited for his friend. While sitting down, Lieutenant Mack noticed that his service weapon had slipped from his waist, down his leg, to the floor. Lieutenant Mack realized that he could not secure his weapon to his waist and placed in on a shelf behind the bar, within his reach of where he was sitting.

On April 1, 2001, at approximately 1:50 A.M., members of the Comptroller's Office and members of the Baltimore Police Department executed a search and seizure warrant at Ronnie's West Side Gallery/Lounge. The search and seizure warrant was obtained after undercover agents purchased alcohol from the lounge with the knowledge that the lounge did not have a license to sell alcohol. As the police entered, the patrons were all ordered to the floor including Lieutenant Mack. During a search of the lounge, Lieutenant Mack's departmental weapon was located on the shelf behind the bar where he had placed it.

An internal investigation was conducted which led to administrative charges being placed against Lieutenant Mack. On July 5, 2001, Lieutenant Mack was served with fourteen (14) charges and fifty nine (59) specifications of violating Baltimore Police Department rules and regulations.

On October 2, 2001, an administrative hearing board was convened to hear the administrative charges placed against Lieutenant Mack. On October 9, 2001, after four (4) days of testimony, Lieutenant Mack was found guilty of twelve (12) administrative charges and forty (40) specifications. The hearing board recommended that Lieutenant Mack receive eight (8) days suspension without pay, seventy three (73) days loss of leave, guidance and

-2-

written counseling. Additionally, the hearing board recommended that Lieutenant Mack's employment be terminated as a result of eighteen (18) guilty findings for making intentional false statements or misrepresentations of material facts with the intent to mislead any person or tribunal.

On November 7, 2001, Police Commissioner Edward Norris accepted the recommendations of the hearing board and terminated Lieutenant Mack's employment with the Baltimore Police Department.

## STANDARD OF REVIEW

The standard of review in appeals taken from a hearing board pursuant to the Law Enforcement Officers' Bill of Rights (LEOBR), Md. Code Ann., Art 27 §§ 727 et seq., is generally applicable to any administrative appeal. Younkers v. Prince George's County, Maryland, 333 Md. 14, 17, 633 A.2d 861, 862 (1993). It is incumbent on the administrative agency to state the findings of fact upon which it bases its opinion. In Rouse-Fairwood Limited Partnership v. Supervisor of Assessments of Prince George's County, 120 Md.App. 667, 697, 708 A.2d 19, 33 (1998), the Court of Special Appeals stated, "The purpose of this requirement is to afford the parties appearing before an administrative agency the right to know the facts relied upon by the agency in reaching its decision as well as to permit meaningful judicial review of the agency's findings." (Citations omitted). In order to sustain an agency finding it is further necessary that "administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full complete and detailed findings of fact and conclusions of law." State of Md. Comm'n on Human Relations v. Malakoff, 273 Md. 214, 229, 329 A.2d 8, 17 (1974).

Thus, a reviewing court "may not uphold the agency order unless it is sustainable on

the agency's findings and for the reasons stated by the agency." <u>United Steel Workers of America AFL-CIO, Local 2610 v. Bethlehem Steel</u>, 298 Md 665, 679, 472 A.2d 62, 69 (1984). The Court of Appeals explained in <u>United Steel Workers</u> that agency decisions are reviewed with stricter scrutiny than trial court judgments. <u>Id</u>. That is, with judicial review of a trial court judgment:

> the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action *the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.*

<u>Id</u>. (emphasis added). Furthermore, the Court of Special Appeals stated that, "An agency decision may be affirmed based only on the agency's findings and for the reasons presented by the agency." <u>Department of Economic and Employment Development v. Propper</u>, 108 Md.App. 595, 607, 673 A.2d 713, 719 (1996).

Similarly, the existence of an unsupported fact or erroneous finding of fact warrants reversal of an agency decision when there is reasonable probability that the error affected the determination of the case. <u>Id</u>. At 607-608, 673 A.2d at 719-720. An administrative action can also be considered by a reviewing court to be arbitrary or unreasonable if it is not based on or supported by sufficient facts or proper factual inferences. <u>State Ins. Commissioner v. National Bureau of Cas. Underwriters</u>, 248 Md. 292, 300-301, 236 A.2d 282, 286 (1967).

## ARGUMENT #1

THE BALTIMORE POLICE DEPARTMENT DID NOT GIVE THE PETITIONER A FAIR AND IMPARTIAL HEARING AS REQUIRED BY LAW.

The Petitioner, John Mack, a Lieutenant with the Baltimore Police Department and

was a "law enforcement officer" as defined by Article 27 §727(b)(2)(Law Enforcement

Officers' Bill of Rights, hereinafter referred to as the LEOBR).

Pursuant to Lieutenant Mack's rights under the LEOBR, an administrative hearing

board was selected by the Baltimore Police Department, Human Resources Division, to hear

the administrative charges that had been placed against him.

Article 27 §727 (d)(1) of the LEOBR states:

Hearing board. - "Hearing board" means:

> (1) A board which is authorized by the chief to hold a hearing on a
> complaint against a law enforcement officer and which consists of
> not less than three members, except as provided in paragraphs (2)
> and (3) of this subsection, all to be appointed by the chief and
> selected from law enforcement officers within that agency, or law
> enforcement officers of another agency with the approval of the chief
> of the other agency, and who have no part in the investigation or
> interrogation of the law enforcement officer. At least one member of
> the hearing board shall be of the same rank as the law enforcement
> officer against whom the complaint has been filed.

The Baltimore Police Department elected to select the members of Lieutenant Mack's

administrative hearing board from within the rank and file of the Baltimore Police Department

and not from another law enforcement agency.  The administrative hearing board heard

testimony, reviewed evidence, and came to a legal conclusion based on the evidence that was

presented.  The administrative hearing board acted as the trier of facts and in a similar fashion

as that of a judge or jury.

The Annotated Code of Maryland, Article 24 §272, et seq. (LEOBR) provides specific

protections to police officers during any inquiry into his conduct which could lead to

disciplinary sanctions.  <u>DiGrazia v. County Executive</u>, 288 Md. 437, 418 A.2d 1191 (1980).

"The purpose of the Law Enforcement Officers' Bill of Rights was to guarantee that certain

procedural safeguards be offered to police officers during any investigation and subsequent hearing which could lead to disciplinary action, demotion to dismissal. Abbott v. Administrative Hearing Bd., 33 Md. App. 681, 366 A.2d 756 (1976).

An administrative hearing board must follow the law as set out in the LEOBR as well as all of the rights that he is entitled to under the United States Constitution and the Maryland Declaration of Rights. While Lieutenant Mack did receive a hearing as required by the LEOBR, it was not a fair hearing. "A fair trial in a tribunal is a basic requirement of due process (guaranteed by the Fourteenth Amendment of the federal constitution)." In re Murchison, 349 U.S. 133, 136, 75 S.CT. 623, 625, 99 L.Ed. 942 (1955). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." Id. "It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge." Jefferson-El v. State, 330 Md. 99, 622 A.2d 737, (Md. 1993) citing Boyd v. State, 321 Md. 69, 78, 581 A.2d 1, 9, (1990); In re Turney, 311 Md. 246, 253, 533 A.2d 916, 920 (1987); Costello v. State, 237 Md. 464, 104, 206 A.2d 812, 817 (1964); Thanos v. Superintendent, 204 Md. 665, 667-68, 104 A.2d. 926, 927 (1954); Bd. Of Medical Examiners v. Steward, 203 Md. 581, 102 A.2d. 248, 251-52 (1954); Western Md. Dairy Corp. v. Brown, 169 Md. 257, 268, 181 A. 468, 473-74 (1935).

It is Lieutenant Mack's position that he could not receive and did not receive a fair and impartial trial by the administrative hearing board that heard his case. Lieutenant Mack's internal investigation and subsequent administrative hearing received a great deal of media attention. (EXHIBIT C-G) Police Commissioner Edward Norris was very outspoken about the internal investigation and Lieutenant Mack's alleged conduct. At a City Council hearing in May, 2001, Commissioner Norris testified that Lieutenant Mack was "working in whorehouse on duty" and

-6-

"ain't good in our eyes, and I don't want him in my police department." (EXHIBIT C) Clearly, based on these comments, Commissioner Norris believed Lieutenant Mack was guilty of violating department policies and procedures before the internal investigation was complete and the administrative hearing had ever been scheduled.

Additionally, on October 3, 2001, the second day of Lieutenant Mack's administrative hearing, Commissioner Norris was interviewed on WBAL radio. During that interview, Commissioner Norris again stated that Lieutenant Mack was going to be terminated. (EXHIBIT H)

It is Lieutenant Mack's position that Commissioner Norris made public comments in reference to his case with the intention of making his personal opinion known to every member of the police department, including the Internal Affairs Division investigators and all potential hearing board members. Lieutenant Mack bases this position on the fact that on April 22, 2002, Commissioner Norris was again before the City Council when he was asked questions in reference to an internal investigation where several police officers were being investigated for working secondary employment at a party where there were female strippers. When asked questions by the City Council President in reference to that incident, Commissioner Norris hesitated before answering and asked his Legal Advisor if he could discuss the incident. The Legal Advisor stated that all of the officers had been identified and the charging committee was going to look at the investigation. He further stated that an offer was going to be made and that he had been working on the issue with the union. Ellen Schwartz, Chief of the Internal Affairs Division, also stated that there were a number of issues that she didn't want to impact what went before the charging committee. (EXHIBIT H) No police officers were identified by name, no police officers were publicly convicted of violating policies and procedures, and no public statements were made in reference to any police officer's employment being terminated.

Commissioner Norris' comments made it impossible for Lieutenant Mack to receive a fair and impartial hearing. Commissioner Norris had already publicly announced Lieutenant Mack was guilty of violating departmental policies and procedures and stated he was going to terminate Lieutenant Mack's employment with the police department. Commissioner Norris' comments, intentionally or unintentionally, biased all members of the Baltimore Police Department from being fair and impartial members of the administrative hearing and prevented Lieutenant Mack from receiving a fair and impartial hearing in this case. It would have been impossible for any member of the Baltimore Police Department who was assigned to the hearing board to keep an open mind and be fair when reviewing the evidence in this case knowing that the Police Commissioner had already stated Lieutenant Mack was guilty.

The hearing board consisted of a Major and two Lieutenants. The future law enforcement careers of all three hearing board members are directly impacted by the Police Commissioner. At the rank of Major, the Police Commissioner has the sole authority to promote, demote, and transfer a Major to another assignment. At the rank of Lieutenant, the Police Commissioner has the sole authority to promote and transfer any Lieutenant to another assignment. Based on the Police Commissioner's public comments, pressure was placed on the members of the administrative hearing board to find Lieutenant Mack guilty. The intentional or unintentional pressure led to bias or the probability of unfairness which violates the basic requirement of due process. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

"In Maryland, an accused has the right to a trial in which the judge: 1) is impartial and disinterested, and 2) has the appearance of being impartial and disinterested." Jefferson-El v. State, 330 Md. 99, 105-08, 622 A.2d 737 (1993). Commissioner Norris's comments eliminated Lieutenant Mack's right to an impartial and disinterested judge or in Lieutenant Mack's case, an impartial and disinterested hearing board.

-8-

An administrative hearing board selected from another law enforcement agency would not have ensured that Lieutenant Mack would have received a fair and impartial hearing. If a hearing board was selected from another law enforcement agency, the *Baltimore Police Commissioner* would still have the opportunity to influence the fair and impartial outcome of this case. Article 27 § 731(c) of the LEOBR states:

> Review by chief, final order by chief. - The written recommendations as to punishment are not binding upon the chief. Within 30 days of receipt of the hearing board's recommendations, the chief shall review the findings, conclusions, and recommendations, the chief shall review the findings, conclusions, and recommendations of the hearing board and then the chief shall issue a final order. The chief's final order and decision is binding and may be appealed in accordance with this subtitle.

Article 27 § 731(c) authorizes the chief to increase the recommended punishment of a hearing board. As a result, if a hearing board, selected from another law enforcement agency, were to have found Lieutenant Mack guilty of any administrative charge and recommended a punishment of less than termination of his employment, the Police Commissioner could have increased the recommended punishment to termination of employment. The Police Commissioner's statements at the May, 2001, City Council Meeting that Lieutenant Mack was guilty and "I don't want him in my police department" is clear evidence that Lieutenant Mack could not receive a fair hearing. (EXHIBIT C)

### ARGUMENT #2

THE BALTIMORE POLICE DEPARTMENT ADMINISTRATIVE
HEARING HAD INSUFFICIENT EVIDENCE FOR ITS GUILTY
FINDING THAT LIEUTENANT MACK INTENTIONALLY MADE
A FALSE STATEMENT OR MISREPRESENTATION OF A MATERIAL
FACT WITH THE INTENT TO MISLEAD A PERSON OR TRIBUNAL.

The administrative hearing board found Lieutenant Mack guilty of Charge #7, Specifications #1, #2, #3, #4, #5, #6, #7, #10, #11, #13, #14, #15, #16, #18, #19, #22, #24, and #25. Charge #7 is for violation of General Order C-2, 2-88, Rule 1, Section 17, which states:

"No member of the department shall knowingly make any false statement
or misrepresentation of any material fact, oral or written under any
circumstances with the intent to mislead any person or tribunal."
(EXHIBIT A)

To be found guilty of Charge #7, the department has the burden to prove that Lieutenant

Mack, "knowingly made a false statement or misrepresentation of a material fact with the intent

to mislead."

In <u>Vandevander v. Voorhaar</u>, 136 Md.App. 621, 635, 767 A.2d 339, 347 (2001), the

Court of Special Appeals of Maryland held, "to uphold an administrative board's order, that order

must be sustainable on its findings of fact *and* for the reasons stated by the agency." (emphasis

in original). Deputy Vandevander was an officer with the St. Mary's Sheriff Department and was

charged with making a false statement because his written account of an incident which occurred

while he was working approved secondary employment differed greatly from witness statements

and other testimony. <u>Id</u>. at 636, 767 A.2d at 348. When discussing the board's findings, the

Court of Special Appeals of Maryland held that, when a charge requires that the board find an

intent to deceive

A clear distinction must be made between reports which contain false
information and those which contain inaccurate or improper information.
To prove by preponderance of the evidence that one had submitted a false
report, evidence must be presented for consideration that such report is
*designedly untrue, deceitful, or made with the intent to deceive the person
to whom it was directed*.

Id. at 636, 767 A.2d at 347 (emphasis in original). In <u>Vandevander</u>, the Court of Special Appeals

reversed the Hearing Board's order because the board made no findings that would tend to show

that Vandevander's account of the events was "anything more than simply inaccurate." <u>Id</u>. at

636, 727 A.2d at 348. The court further held that, due to the lack of any intentional deception

on Vandevander's part, "reasoning minds reasonably would have inferred that any inaccuracies

in the deputy's retelling of events spring from a lapse of memory or his perception of the event

..." Id.

The Court of Special Appeals' ruling in Vandevander is instructive in this case. On April 20, 2001, Lieutenant Mack was interviewed by Lieutenant Keith Tiederman and Sergeant Lonnie Luedtke of the Baltimore Police Department, Internal Affairs Division (hereinafter referred to as IAD). The interview was tape recorded and video taped. A transcript was later made of the interview. (EXHIBIT I).

Lieutenant Mack was found guilty of Charge #7, Specification #1 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that he was limited duty status on March 31, 2001 and April 1, 2001. (EXHIBIT A)

During his IAD interview, Lieutenant Mack stated that he was on limited duty. (EXHIBIT I, page 7) Lieutenant Mack further stated that as a result of the injury to his knee he would come to work and handle administrative work. He stated that he would respond to crime scenes but would not participate in the investigations. He stated that he worked in a limited capacity. (EXHIBIT I, pages 44-46). Lieutenant Mack never stated nor did he infer that the department put him on limited duty status. The Internal Affairs investigators never asked Lieutenant Mack if the department placed him on limited duty status. Based on the questions that were asked by the IAD investigators, there was insufficient evidence to prove that Lieutenant Mack made a false statement with the intent to mislead the IAD investigators. Additionally, the hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 12) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that he could not work in a full duty capacity, therefore, he was on limited duty.

Lieutenant Mack was found guilty of Charge #7, Specification #2 which states:

-11-

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that he was on medical leave on March 31, and April 1, 2001. (EXHIBIT A)

During his IAD interview, Lieutenant Mack stated that he was on medical leave on March 31, 2001 and April 2001. (EXHIBIT I, page7). Lieutenant Mack stated that he was on medical leave and could not work the weekend of March 31, 2001 and April 1, 2001. (EXHIBIT I, page 7-8 and page 13) Lieutenant Mack never stated nor did he infer that the department had put him on medical leave. Based on the questions that were asked by the IAD investigators, there was insufficient evidence to prove that Lieutenant Mack made a false statement with the intent to mislead the IAD investigators. Additionally, the hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 12) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that because of his knee injury, he could not work the weekend on full duty and therefore, he was on medical leave.

Lieutenant Mack was found guilty of Charge #7, Specification #3 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that he had informed Major Antonio Williams that he was unable to work due to his injury. (EXHIBIT A)

During his IAD interview, Lieutenant Mack never stated that he told Major Williams that he was unable to work. (EXHIBIT I ). Lieutenant Mack told the IAD investigators, "Actually, it was my impression Major Williams thought I was medical period, this is the problem, Major Williams never knew I was working at all, so on, this is where the conversation, where Colonel Hawkins is pointed, Colonel Hawkins said on the 28th, he contacted Major Williams, Major Williams advised him that I was still on medical, which Major Williams, I advised Major Williams that I was hurt on the 2nd of March, the reason for, the reason why, Colonel Hawkins did not meet

-12-

with me, and he advised me of that from my attorney and in front of Rick Height." (EXHIBIT I, page 8). Lieutenant Mack further stated, "On that day, I advised Major Williams, that I probably going to have surgery and I was going to be out, I was going to be out, however, what I, instead of being medical, what I did was I knew that Western District did not have a lieutenant, I knew I only 12 detectives, so what I did was, I told my sergeant if I could come in, I would try to help him out as much as possible." (EXHIBIT I, page 9) The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 13) indicate that in Lieutenant Mack's IAD statement he told investigators that he informed Major Williams that he was unable to work due to his injury. Lieutenant Mack never said those words. The "Finding of Fact" also does not identify any evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that because of his knee injury he was unable to work full duty. Therefore, he stated that he was unable to work due to his injury.

Lieutenant Mack was found guilty of Charge #7, Specification #4 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that Major Williams knew and/or believed he was on medical leave on March 31, 2001. (EXHIBIT A)

Lieutenant Mack told the IAD investigators, "Actually, it was my impression Major Williams thought I was medical period, this is the problem, Major Williams never knew I was working at all, so on, this is where the conversation, where Colonel Hawkins is pointed, Colonel Hawkins said on the 28th, he contacted Major Williams, Major Williams advised him that I was still on medical, which Major Williams, I advised Major Williams that I was hurt on the 2nd of March, the reason for, the reason why, Colonel Hawkins did not meet with me, and he advised me of that from my attorney and in front of Rick Height." (EXHIBIT I, page 8). Lieutenant

-13-

Mack further stated, "On that day, I advised Major Williams, that I probably going to have surgery and I was going to be out, I was going to be out, however, what I, instead of being medical, what I did was I knew that Western District did not have a lieutenant, I knew I only 12 detectives, so what I did was, I told my sergeant if I could come in, I would try to help him out as much as possible." (EXHIBIT I, page 9) During his testimony, Major Williams acknowledged that he knew Lieutenant Mack had injured his knee and that he was told he was going to need surgery. (Transcript, October 4, 2001, page36-38, 56-65) Major Williams further testified that he knew Lieutenant Mack had taken a few vacation days as a result of his knee injury and that he told Colonel Hawkins that Lieutenant Mack was off on medical. (Transcript, October 4, 2001, page 57-63) Lieutenant Mack's statement to IAD was that he believed Major Williams knew he was on medical leave. Lieutenant Mack never stated the medical leave was sanctioned by the department. He used the words medical leave to describe the fact that he could not perform the duties of a police officer as a result of his knee injury and it was his opinion that Major Williams was aware he was not working. Major Williams' testimony at the hearing was not credible. While on direct examination, Major Williams testified:

> A    He gave me a rundown of who was supposed to work that weekend.
>      And I also had a conversation with Lt. Mack, just to verify that he was
>      going to be able to work that weekend.
>
> Q    Okay. And when did that conversation take place?
>
> A    Around Wednesday or Thursday of that week

(Transcript, October 4, 2001, pages 21-22)    On cross-examination, Major Williams acknowledged that he never told IAD investigators of his conversation with Lieutenant Mack regarding the fact that he was going to work the weekend of March 30, 31 and April 1, 2001. (Transcript, October 4, 2001, pages 80-82) Major Williams testified that IAD did not give him

-14-

any time to prepare for his interview and the investigator never specifically asked the question if he had any conversations with Lieutenant Mack about his working the weekend in question. (Transcript, October 4, 2001, pages 80-82) A review of Major Williams' statement to IAD, taken on April 5, 2001, completely contradicts his hearing testimony. Major Williams was asked:

> Q    Do you have any recollection of any conversation that you might have had with Lieutenant Mack about the upcoming weekend and the he was scheduled?
>
> A    No, no specific conversation.

(EXHIBIT K, page 32) Major Williams' IAD statement was taken one week from the date of the incident and he did not remember any conversation with Lieutenant Mack in reference to the weekend schedule. Six months later he testified that he did have a conversation. Major Williams' testimony was not credible and should not have been given any weight. Additionally, the hearing board's stated reasons for a finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 13) identified no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that Major Williams knew he was on medical leave on March 31, 2001.

Lieutenant Mack was found guilty of Charge #7, Specification #5 which states:

For that, on or about April 20, 2002, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that he was not supposed to work the weekend of March 30, 31 and April 1, 2001. (EXHIBIT A)

Lieutenant Mack told the IAD investigators that he was not supposed to work the weekend of March 30, 31 and April 1, 2001 because of his knee injury. (EXHIBIT I, page 6-13) It was Lieutenant Mack's belief that he was not suppose to work that weekend. Additionally, the

-15-

hearing board's stated reasons for the finding of guilty in the "Finding of Fact" (EXHIBIT B, page14) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that because of his knee injury and the fact that he could not work at full duty capacity, he was not suppose to work the weekend of March 30, 31 and April 1, 2001.

Lieutenant Mack was found guilty of Charge #7, Specification #6 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that he was "off" on March 31, 2001. (EXHIBIT A)

Lieutenant Mack told the IAD investigators that he was not working the weekend of March 30, 31 and April 1, 2001, because of his knee injury. (EXHIBIT I, pages 6-13) It was Lieutenant Mack's belief that he was "off" on March 31, 2001. Additionally, the hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 14) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that because of his knee injury he could not work at full duty capacity, therefore, he was "off" on March 31, 2001.

Lieutenant Mack was found guilty of Charge #7, Specification #7 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told IAD investigators that on April 1, 2001 he arrived at Ronnie's West Side Gallery/Lounge at approximately 1:30 A.M. (EXHIBIT A)

The only evidence present in reference to the time Lieutenant Mack arrived at the club was from Monica Barnett. On direct examination, Barnett testified that Lieutenant Mack arrived at the club between 11:00 and 11:30 P.M.. (Transcript, October 2, 2001, page 188) On cross

examination, Barnett stated she didn't have a watch on that night and had never seen Lieutenant

Mack prior to that night. (Transcript, October 2, 2001, page 223) On April 4, 2001, Barnett was

interviewed by IAD investigators. During that interview, she advised Lieutenant Mack arrived

about 11:30 - 11:45 PM. (EXHIBIT J, page 2) Barnett's testimony was inconsistent and not

credible. Additionally, the hearing board's stated reason for the finding of guilty, found in the

"Finding of Fact" (EXHIBIT B, page 14) stated, "Testimony was given at the trial board from

Ms. Monica Barnett that Lt. John Mack arrived at Ronnie's West Side Gallery on March 31,

2001 at 11:30 P.M." This statement is not accurate based on the testimony. Barnett never

testified that Lieutenant Mack arrived at 11:30 P.M. Additionally, the "Finding of Fact"

identifies no evidence that would establish an intent to make a false statement or

misrepresentation of any material fact with the intent to mislead any person or tribunal. It was

Lieutenant Mack's perception that he arrived at the club at approximately 1:30 P.M.

Lieutenant Mack was found guilty of Charge #7, Specification #10 which states:

> For that, on or about April 1, 2001, Lieutenant John Mack did make a false
> statement with the intent to mislead when he told Major Antonio Williams that
> his girlfriend took his departmental weapon on March 31, 2001 and took it to
> Ronnie's West Side Gallery/Lounge. (EXHIBIT A)

The only evidence presented was Major Williams' testimony that he received a telephone

call from Major Moye and then from Lieutenant Mack at approximately 4:30 A.M. and that he

was asleep prior to the telephone calls. (Transcript, October 4, 2001, pages 26-27) The ability

of a person to recall exactly what was said shortly after being awoken from sleep is questionable.

Major Williams testified, "Then he said that his girlfriend worked at a strip club. He didn't want

her working there and he told her not to go. She went anyway and she took his gun and he didn't

know it. He said he went to the club, and he said it was a lot of people. He didn't want to lose

his gun. His pants were loose fitting and falling down so he put his gun behind the counter and

-17-

asked her to watch it for him." (Transcript October 4, 2001, pages 26-27). Major Williams'
testimony about what Lieutenant Mack allegedly stated does not even make sense. It should not
have been given the weight to convict on this charge. Major Williams' testimony at the hearing
was not credible. While on direct examination, Major Williams testified:

> A    He gave me a rundown of who was supposed to work that weekend.
>      And I also had a conversation with Lt. Mack, just to verify that he was
>      going to be able to work that weekend.
>
> Q    Okay. And when did that conversation take place?
>
> A    Around Wednesday or Thursday of that week

(Transcript, October 4, 2001, pages 21-22)  On cross-examination, Major Williams
acknowledged that he never told IAD investigators of his conversation with Lieutenant Mack
regarding the fact that he was going to work the weekend of March 30, 31 and April 1, 2001.
(Transcript, October 4, 2001, pages 80-82) Major Williams testified that IAD did not give him
any time to prepare for his interview and the investigator never specifically asked the question
if he had any conversations with Lieutenant Mack about his working the weekend in question.
(Transcript, October 4, 2001, pages 80-82)  A review of Major Williams' statement to IAD,
taken on April 5, 2001, completely contradicts his hearing testimony. Major Williams was
asked:

> Q    Do you have any recollection of any conversation that you might have
>      had with Lieutenant Mack about the upcoming weekend and the
>      he was scheduled?
>
> A    ·No, no specific conversation.

(EXHIBIT K, page 32) Major Williams' IAD statement was taken one week from the date of
the incident and he did not remember any conversation with Lieutenant Mack in reference to the
weekend schedule. Six months later he testified that he did have a conversation.   Major

Williams' testimony was not credible and should not have been given any weight.

Additionally, the hearing board's stated reason for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 15) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal.

Lieutenant Mack was found guilty of Charge #7, Specification #11 which states:

For that, on or about April 1, 2001, Lieutenant John Mack did make a false statement with the intent to mislead when he told Major Antonio Williams that on April 1, 2001 he put his departmental weapon behind the counter at Ronnie's West Side Gallery/Lounge and asked his girlfriend to watch it. (EXHIBIT A)

The only evidence presented was Major Williams testimony that he received a telephone call from Major Moye and then from Lieutenant Mack at approximately 4:30 A.M. and that he was asleep prior to the telephone calls. (Transcript, October 4, 2001, pages 26-27) The ability of a person to recall exactly what was said shortly after being awoken is questionable. Major Williams testified, "Then he said that his girlfriend worked at a strip club. He didn't want her working there and he told her not to go. She went anyway and she took his gun and he didn't know it. He said he went to the club, and he said it was a lot of people. He didn't want to lose his gun. His pants were loose fitting and falling down so he put his gun behind the counter and asked her to watch it for him." (Transcript, October 4, 2001, pages 26-27). Major Williams' testimony about what Lieutenant Mack allegedly stated does not even make sense. It should not have been given the weight to convict on this charge. Major Williams' testimony at the hearing was not credible. While on direct examination, Major Williams testified:

A   He gave me a rundown of who was supposed to work that weekend. And I also had a conversation with Lt. Mack, just to verify that he was going to be able to work that weekend.

Q   Okay. And when did that conversation take place?

-19-

A    Around Wednesday or Thursday of that week

(Transcript, October 4, 2001, pages 21-22)    On cross-examination, Major Williams acknowledged that he never told IAD investigators of his conversation with Lieutenant Mack regarding the fact that he was going to work the weekend of March 30, 31 and April 1, 2001. (Transcript, October 4, 2001, pages 80-82) Major Williams testified that IAD did not give him any time to prepare for his interview and the investigator never specifically asked the question if he had any conversations with Lieutenant Mack about his working the weekend in question. (Transcript, October 4, 2001, pages 80-82) A review of Major Williams' statement to IAD, taken on April 5, 2001, completely contradicts his hearing testimony. Major Williams was asked:

Q    Do you have any recollection of any conversation that you might have had with Lieutenant Mack about the upcoming weekend and the he was scheduled?

A    No, no specific conversation.

(EXHIBIT K, page 32) Major Williams' IAD statement was taken one week from the date of the incident and he did not remember any conversation with Lieutenant Mack in reference to the weekend schedule. Six months later he testified that he did have a conversation. Major Williams' testimony was not credible and should not have been given any weight. Additionally, the hearing board's stated reason for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 15) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal.

Lieutenant Mack was found guilty of Charge #7, Specification #13 which states:

For that, on or about April 20, 2001, Lieutenant John Mack made a false statement with the intent to mislead when he told IAD investigators that

his departmental weapon was within his grasp and reach when he was
present at Ronnie's West Side Gallery/Lounge on April 1, 2001. (EXHIBIT A)

There was no evidence presented that Lieutenant Mack's departmental weapon was not

within his grasp. Lieutenant Mack told investigators that he reached around the bar and placed

his weapon on a shelf. (EXHIBIT I, pages 17-18) Lieutenant Mack also told the investigators

he could reach back and pick up his weapon or stop anyone from walking behind the bar because

of where his chair was located. (EXHIBIT I, Pages 33-34) There was no testimony or evidence

presented that contradicted Lieutenant Mack's account of where he was sitting prior to the raid.

The only testimony presented was from officers who participated in the raid as to Lieutenant

Mack's location after the police told everyone to get on the ground. The hearing board's reason

for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 17) was, ". . .

Additional testimony was received that Lt. Mack was sitting approximately eight feet from his

weapon." There was no testimony from any witness, other than Lieutenant Mack, as to where

he was "sitting" in relation to his departmental weapon. Additionally, the "Finding of Fact"

identified no evidence that would establish an intent to make a false statement or

misrepresentation of any material fact with the intent to mislead any person or tribunal. It was

Lieutenant Mack's perception that his departmental weapon was within his grasp and reach when

he was at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #14 which states:

For that, on or about April 20, 2001, Lieutenant Mack did make a false
statement with the intent to mislead when he told IAD investigators that he
never went behind the bar at Ronnie's West Side Gallery/Lounge on March 31,
2001 or April 1, 2001. (EXHIBIT A)

The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact"

(EXHIBIT B, page 17) stated, "In Lt. Mack's own trial board testimony he went behind the bar

to place his weapon there." Lieutenant Mack never testified that he went behind the bar.

Lieutenant Mack testified that he bent down and leaned forward and placed the weapon on the shelf at the end of the bar and then sat back in his chair. (Transcript, October 8, 2001, Pages 163-164 and 266-269) The only witness who testified that Lieutenant Mack was behind the bar was Monica Barnett. In Barnett's earlier statement to IAD investigators, she never stated that Lieutenant Mack served her alcohol. (EXHIBIT J) Barnett was not credible and no other witness corroborated her testimony. Additionally, the hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 17) identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that he was not behind the bar or did not remember being behind the bar while at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #15 which states:

> For that, on or about April 20, 2001, Lieutenant Mack did make a false statement with the intent to mislead when he told IAD investigators that he never served alcohol at Ronnie's West Side gallery/Lounge on March 31, 2001 or April 1, 2001. (EXHIBIT A)

The only witness who testified Lieutenant Mack served alcohol was Monica Barnett. In her earlier statement to IAD investigators, she never stated that Lieutenant Mack served her any alcohol. (EXHIBIT J)   Barnett was not credible and no other witness corroborated her testimony.   The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 17) stated, "Testimony was received from Ms. Monica Barnett that Lt. Mack served her two alcoholic drinks while he was tending bar." There was no testimony from Barnett that Lieutenant Mack served her two alcoholic drinks.   (Transcript, October 2, 2001, pages 180-257)   Additionally, the hearing board's stated reasons for the finding of guilty identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal.   It was

-22-

Lieutenant Mack's perception that he did not serve alcohol or he does not remember serving alcohol while at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #16 which states:

> For that, on or about April 20, 2001, Lieutenant Mack did make a false statement with the intent to mislead when he told IAD investigators that nobody was serving liquor while he was present at Ronnie's West Side Gallery/Lounge on March 31, 2001 and/or April 1, 2001. (EXHIBIT A)

The only witness who testified Lieutenant Mack served alcohol was Monica Barnett. In her earlier statement to IAD investigators, she never stated that Lieutenant Mack served her any alcohol. (EXHIBIT J) Barnett was not credible and no other witness corroborated her testimony. The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 18) states, "Lt. Mack did intend to mislead investigators by falsely telling them no one was being served alcohol at Ronnie's West Side Gallery. Ms. Monica Barnett gave additional testimony, that Lt. Mack served her two alcoholic drinks while at Ronnie's West Side Gallery." There was no testimony from Barnett that Lieutenant Mack served her two alcoholic drinks. (Transcript, October 2, 2001, pages 180-257) Additionally, the hearing board's stated reasons for the finding of guilty identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that nobody was serving alcohol while he was present at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #18 which states:

> For that, on or about April 20, 2001, Lieutenant Mack did make a false statement with the intent to mislead when he told IAD investigators that he saw only one woman at Ronnie's West Side Gallery/Lounge on March 31, 2001 and/or April 1, 2001. (EXHIBIT A)

The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 18) states, "Testimony was received that there was more than one dancer in

-23-

the hall area of Ronnie's West Side Gallery." There was additional testimony from Officer Paul Egbert that he was a member of the raiding party and one of the first officers to enter the hall. Officer Egbert testified that upon entering the hall, he only observed one woman in the hall but later observed other women exiting the back room. (Transcript, October 3, 2001, pages 295-296) This testimony corroborated Lieutenant Mack's statement to IAD investigators. Additionally, the hearing board's stated reasons for the finding of guilty identifies no evidence that would establish an intent to make a false statement or misrepresentation of any material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that he only saw one woman at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #19 which states:

> For that, on or about April 20, 2001, Lieutenant Mack did make a false statement with the intent to mislead when he told IAD investigators that he was not working at Ronnie's West Side Gallery/Lounge on March 31, 2001 and/or April 1, 2001. (EXHIBIT A)

The only witness who testified Lieutenant Mack was working at Ronnie's West Side Gallery was Monica Barnett when she testified that Lieutenant Mack served her an alcoholic drink.    In her earlier statement to IAD investigators, she never stated that Lieutenant Mack served her any alcohol.    (EXHIBIT J)    Barnett was not credible and no other witness corroborated her testimony.    The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact" (EXHIBIT B, page 19) states, "Testimony was received from Ms. Monica Barnett that Lt. Mack served her two alcoholic drinks while she was seated at the bar." There was no testimony from Barnett that Lieutenant Mack served her two alcoholic drinks. (Transcript, October 2, 2001, pages 180-257) There was also no testimony that the drinks were served to her while Barnett was seated at the bar. (Transcript, October 2, 2001, Pages 189-190) Additionally, the hearing board's stated reasons for the finding of guilty identifies no evidence that

would establish an intent to make a false statement or misrepresentation of any material fact with

the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that he was not

working at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #22 which states:

For that, on or about April 20, 2001, Lieutenant John Mack did make a false
statement that he was not told by anybody on April 1, 2001 to remain at Ronnie's
West Side Gallery/Lounge. (EXHIBIT A)

The hearing board's stated reasons for the finding of guilty, found in the "Finding of Fact"

(EXHIBIT B, page 20) states, "Testimony was received that Lt. Mack was asked to remain at

the scene of Ronnie's West Side Gallery but left." The hearing board failed to identify any person

who told Lieutenant Mack to remain at the scene. Additionally, the hearing board's stated

reasons for the finding of guilty identifies no evidence that would establish an intent to make a

false statement or misrepresentation of any material fact with the intent to mislead any person or

tribunal. It was Lieutenant Mack's perception that he was not told to remain at the club or he

did not remember being told to remain at the club.

Lieutenant Mack was found guilty of Charge #7, Specification #24 which states:

For that, on or about April 1, 2001, Lieutenant John Mack did cause a
misrepresentation of a material fact with the intent to mislead IAD
investigators when he called Detective Lansey and directed him to change
the roll book to reflect that Lieutenant John Mack was not scheduled to
work on March 31, 2001 and April 1, 2001. (EXHIBIT A)

Lieutenant Mack testified that he called Detective Lansey and told him to change the roll

book to reflect his correct schedule. It was Lieutenant Mack's belief that he was not suppose to

work that weekend due to his knee injury. (Transcript, October 8, 2001. Pages 197-202)

Additionally, the hearing board's stated reasons for the finding of guilty in the "Finding of Fact"

(EXHIBIT B, page 20) states, "Testimony was given by Det. Lansey that Lt. Mack called him

and told him to change the roll book which reflected Lt. Mack as not working on march 31, 2001

-25-

and 1 April, 2001." The hearing board's stated reasons for the finding of guilty in the "Finding of Fact" identifies no evidence that would establish an intent to make a false statement or misrepresentation of a material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that by directing Detective Lansey to change the roll book he was attempting to make the roll book accurate.

Lieutenant Mack was found guilty of Charge #7, Specification #25 which states:

For that, on or about April 1, 2001, Lieutenant John Mack did cause a misrepresentation of a material fact with the intent to mislead IAD investigators when he called Detective Lansey and directed him to change the roll book to reflect that Lieutenant John Mack was not working on March 31, 2001 and April 1, 2001. (EXHIBIT A)

Lieutenant Mack testified that he called Detective Lansey and told him to change the roll book to reflect his correct schedule. It was Lieutenant Mack's belief that he was not suppose to work that weekend due to his knee injury. (Transcript, October 8, 2001. Pages 197-202) Additionally, the hearing board's stated reasons for the finding of guilty in the "Finding of Fact" (EXHIBIT B, page 20) states, "Testimony was given by Det. Lansey that Lt. Mack called him and told him to change the roll book which reflected Lt. Mack as not working on march 31, 2001 and 1 April, 2001. Additional testimony was received from IAD Sgt. Luedtke that the changing of this roll book caused an additional investigation and misled IAD's investigation" The hearing board's stated reasons for the finding of guilty in the "Finding of Fact" identifies no evidence that would establish an intent to make a false statement or misrepresentation of a material fact with the intent to mislead any person or tribunal. It was Lieutenant Mack's perception that by directing Detective Lansey to change the roll book he was attempting to make the roll book accurate.

A reversal of the Board's decision in each of these charges is the most appropriate remedy. When administrative agency fails to sufficiently resolve factual disputes and document

its findings, it is inappropriate for a reviewing court to remand the case. The Court of Appeals of Maryland has held that "the courts may not accept appellate counsel's post hoc rationalizations for agency action." United Steelworkers of America AFL-CIO, Local 2610 v. Bethlehem Steel Corp., 298 Md. At 679, 472 A.2d at 69 (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). If administrative agencies are not permitted to engage in post hoc rationalization, it can reasonably be inferred that reviewing courts are also not permitted to engage in such rationalizations. The Court of Special Appeals of Maryland in Vandevander also ordered a reversal of the administrative board's decision, rather than a remand, in a case strikingly similar to this case. Here, the most appropriate remedy for Lieutenant Mack would be to order a reversal of the Board's decisions. The Board had a responsibility to state the reasons for its decision on the record and failed to state any reason involving Lieutenant Mack's intentional false statements of a material fact with the intent to mislead any person or tribunal. Beyond that, based on the Vandevander standard, there was no evidence to support a finding of intentional deception. This case does not involve intentional deception, but merely involves the Lieutenant's perception of the incident at the time he was interviewed by the IAD investigators. Remanding the case would be inappropriate as it is clear from the record that there was no evidence of intentional deception on the part of Lieutenant Mack.

## CONCLUSION

For the foregoing reasons, the decision of the Baltimore Police Department Administrative Hearing Board should be reserved and Lieutenant Mack should be reinstated as a Lieutenant with the Baltimore Police Department.

Michael E. Davey
Schlachman, Belsky & Weiner, P.A.
Sun Life Building, Tenth Floor
20 South Charles Street
Baltimore, Maryland 21201
410-685-2022
Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____1st____ day of ___May_____, 2002, a copy
of the foregoing **MEMORANDUM IN SUPPORT OF REQUEST FOR JUDICIAL
REVIEW** was mailed, postage paid to: Attorney for the Respondent, Sean Malone, Esquire, 601
E. Fayette Street, Baltimore, Maryland 21202.

MICHAEL E. DAVEY