IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN M. MACK | * |
|     Plaintiff | * |
| v. | *    Case No.: JFM 02-3089 |
| STATE OF MARYLAND et al. | * |
|     Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF MARTIN O'MALLEY'S
MOTION TO DISMISS AMENDED COMPLAINT**

Martin O'Malley ("the Mayor"), by his attorneys, Donald R. Huskey, Deputy City Solicitor, and William R. Phelan, Jr., Principal Counsel, submits the following memorandum of law in support of his motion to dismiss the amended complaint.

### INTRODUCTION

The Plaintiff, John M. Mack, has filed an amended complaint against the State of Maryland, the Baltimore Police Department ("BPD"), former Baltimore Police Commissioner Edward T. Norris, Major Antonio Williams of the BPD, Mayor Martin O'Malley and the Mayor and City Council of Baltimore ("the City"). As against the Mayor, the Plaintiff asserts a claim under 42 U.S.C. §1983 for denial of due process (Count 6); and state law claims for interference with contract rights (Count 7), conspiracy (Count 8), and intentional infliction of emotional distress (Count 9).

## STATEMENT OF FACTS

The Plaintiff's claims all arise from the circumstances of his termination as a member of the Baltimore Police Department. The Plaintiff has alleged that on April 1, 2001, officers of the BPD executed a search and seizure warrant on Ronnie's Westside Gallery to determine whether that establishment was making sales of unlicensed liquor. *Amended Complaint* at ¶7. The Plaintiff was off duty and present on the premises, with his service revolver behind the counter. *Amended Complaint* at ¶7. The Plaintiff alleges that former Police Commissioner Norris made false public statements and used false testimony before a departmental trial board in order to remove Mack from the police force. *Amended Complaint* at ¶¶12, 25.

With respect to the Mayor, the Plaintiff has alleged that, after Mayor O'Malley became aware of the false information about the Plaintiff, the Mayor made statements about Mack's lack of usefulness as a police officer. *Amended Complaint* at ¶49. The Plaintiff further alleges that the Mayor made these statements in an effort to influence the officers from whose ranks the trial board would be drawn. *Amended Complaint* at ¶50. The trial board eventually recommended Mack's termination. *Amended Complaint* at ¶53. The Plaintiff argues that the Mayor thus denied him due process. *Amended Complaint* at ¶54.

The Plaintiff has also alleged that the Mayor's actions unlawfully interfered with Mack's contractual relationship with the BPD. *Amended Complaint* at ¶¶58, 59. The Plaintiff further alleges that the Mayor conspired with then-Commissioner Norris and Major Williams to terminate the Plaintiff by using false testimony and influencing the trial board. *Amended Complaint* at ¶64. Lastly, the Plaintiff alleges that the Mayor's actions were extreme and outrageous and caused Mack emotional suffering. *Amended Complaint* at ¶69.

## STANDARD FOR DECISION

Dismissal for failure to state a claim upon which relief can be granted is proper under Fed. R. Civ. P. 12(b)(6), when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984), citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The Fourth Circuit has stated that "the purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999), quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992).

## ARGUMENT

**I.   The amended complaint fails to state a claim against the Mayor under 42 U.S.C. §1983.**

Count 6 of the amended complaint seeks to assert a claim against the Mayor under 42 U.S.C. §1983, alleging that, by making statements critical of the Plaintiff, the Mayor denied the Plaintiff due process[1] before the BPD's trial board. In order to state a due process claim under §1983, a plaintiff must show that he or she was deprived of a federally protected right by the defendant, without sufficient procedural protections to safeguard against a wrongful deprivation. *Wells v. Wade*, 36 F. Supp. 2d 154, 158 (S.D.N.Y. 1999); *see also Piecknick v. Pennsylvania*, 36 F. 3d 1250, 1255-56 (3d Cir. 1994); *Collins v. Walden*, 613 F. Supp. 1306, 1312 (N.D.Ga. 1985). If there is no violation of a federal right, there is no basis for an action under §1983. *Hodge v. Jones*, 31 F.3d 157, 167 (4th Cir. 1994). Moreover, if the state has provided adequate post-deprivation remedies, there is no denial of due

---

[1] The Fourteenth Amendment states in part: "*** nor shall any State deprive any person of life, liberty, or property, without due process of law; ***" U.S. CONSTITUTION, Amendment 14, §1.

3

process. *Hanson v. Hancock County Memorial Hospital*, 938 F. Supp. 1419, 1433 (N.D.Iowa 1996); *Collins v. Walden*, 613 F. Supp. at 1312.

In order to state a claim against the Mayor, the Plaintiff must show that the Mayor deprived him of a liberty or property right without due process. As a matter of law, the Plaintiff cannot accomplish this.

### A.     *The Mayor did not deprive the Plaintiff of a liberty or property right.*

In order to state a claim against the Mayor for a due process violation, the Plaintiff must first establish that the Mayor deprived him of a federally protected liberty or property right. The apparent interest that is the subject of this action is the Plaintiff's employment with the Baltimore Police Department. The Maryland courts, however, have held that the Law Enforcement Officers' Bill of Rights ("LEOBR"), Art. 27, §§727-734D, does not operate to confer a property right in a police officer's continued employment. *Carroll v. City of Westminster*, 52 F. Supp. 2d 546, 562 (D.Md.1999), citing *Elliott v. Kupferman*, 58 Md. App. 510 (1984). Accordingly, it appears that the Plaintiff had no property right in his continued employment and cannot state a claim for the loss of such a right.

Even if the Plaintiff had a right to continued employment, he can maintain an action against the Mayor for its loss only if the Mayor deprived the Plaintiff of his job. As a matter of law, however, the Mayor played no part in the terminating the Plaintiff from his employment.

The authority to deprive a police officer of his or her job is granted and regulated by state law. The BPD is an agency of the State of Maryland. PUBL. LOCAL LAWS OF MD., Art. 4, §16-2. The affairs and operations of the BPD are supervised and directed by the Police Commissioner. *Id.*, §16-4. The Police Commissioner has been given complete control over discipline within the BPD and has the sole authority to discharge members from the force. *Id.*, §16-7 (7), (8). When a police officer is charged

with misconduct, the charges are tried before a trial board composed of officers of his or her police force or by officers of an outside law enforcement agency. MD. CODE ANN., Art 27, §§730, 727(d) (parts of the LEOBR). After the trial board reaches a decision on the charges and on any possible punishment, it makes written recommendations to the Police Commissioner. *Id*., §731(a), (b). Within thirty days of receiving the trial board's recommendations, the Police Commissioner reviews the board's findings, conclusions and recommendations and issues a final order deciding the case. *Id*., §731(c). The Police Commissioner's final decision can be appealed to the Circuit Court and from there to the Court of Special Appeals.[2] *Id*., §§731(c), 732.

It is clear that under Maryland law it is the Police Commissioner alone who is empowered to make final decisions with respect to the discipline or discharge of police officers, subject to an appeal to the courts. Neither the Code of Public Local Laws nor the LEOBR provides any role for a Mayor to play in the process. In fact, Mayors and other officials of the City are explicitly forbidden by state law from interfering with the Police Commissioner's powers or becoming involved in the operations of the BPD. BALT. CITY CHARTER, Art. II, §27. Therefore, any deprivation of a purported property right in continued employment in the BPD can be accomplished only by the Police Commissioner.

Because the Plaintiff's employment with the BPD was terminated by the Police Commissioner and not by the Mayor, the Plaintiff cannot establish that the Mayor deprived him of a liberty or property interest, with or without due process. Therefore, the Plaintiff cannot state a claim against the Mayor under §1983.

---

[2] In fact, the Plaintiff has appealed the final decision of the former Police Commissioner. That case is presently pending in the Court of Special Appeals. Because the Plaintiff is litigating on appeal his assertion that he was denied of due process in the trial board hearing, the Mayor joins in the abstention argument made by former Police Commissioner Norris.

> B. *The termination of the Plaintiff's employment was accomplished without a deprivation of due process.*

The Plaintiff has alleged that statements by the Mayor deprived him of due process by influencing the members of the trial board that recommended his dismissal. *Amended Complaint* at ¶¶50, 51. However, there was no deprivation of due process in the trial board hearing.

Under the LEOBR, officers who are charged with misconduct and who must appear before a trial board are afforded prehearing and post-hearing procedures for ensuring that members of a trial board are not biased. A trial board may be composed of officers of the local law enforcement agency or of members of a different agency, with the approval of the chief of the agency. MD. CODE ANN., Art 27, §727(d). Thus, in order to avoid any ill effects of prehearing publicity or any other possible cause of impartiality, an officer may request that his or her trial board be composed of officers from another law enforcement agency.

In addition, an officer may move that members of a trial board recuse themselves, as was done in *Sewell v. Norris*, 148 Md. App. 122, 130 (2002). If the officer is aggrieved by the final decision of the Police Commissioner, he or she can file an appeal to the Circuit Court, with a further appeal to the Court of Special Appeals, as the Plaintiff has done. MD. CODE ANN., Art 27, §§731, 732.

There is also a procedure by which an officer can go directly to the Circuit Court for an order guaranteeing that the officer's rights under the LEOBR are fully respected. In other words, an officer who believes that the trial board should be composed of officers from an outside law enforcement agency or that the officers on the trial board are biased, can apply to the Circuit Court for an order that the composition of the trial board be altered. MD. CODE ANN., Art 27, §734. This was the procedure used by the officer in *Sewell, supra*, in which the Court of Special Appeals held that the officer was

6

entitled to a new trial board hearing before a board comprised of officers who were not members of the BPD. *Sewell*, 148 Md. App. at 130-31, 138-39.

Thus, Maryland law provides four different ways for an officer to raise the issue of bias or impartiality in a trial board. It is important to note that there is no deprivation of due process where the state has provided an adequate post-deprivation remedy. *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 643 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Three of the procedures for challenging the composition of a trial board are available *before* there has been a deprivation of a liberty or property interest. Thus, there could be no lack of due process regarding the Plaintiff's allegations of bias. The Plaintiff had every opportunity to request a trial board composed of officers from outside Baltimore, to seek the recusal of the trial board members or to ask that the Circuit Court order a new panel. In addition, he is availing himself of his right to appellate review of his termination. If the Plaintiff chose not to use the procedures that were available to him, he cannot complain that he was not afforded due process.[3]

Because the Plaintiff had available at least four ways by which he could challenge the composition of the trial board, he was not denied due process due to the makeup of the trial board. Therefore, the Plaintiff cannot state a claim against the Mayor for deprivation of a liberty or property interest without due process.

---

[3] It is also important to note that it is the trial board, the Police Commissioner and the Circuit Court that are authorized to take actions to ensure that a trial board is not biased. A Mayor has no authority to discipline or fire a police officer or to remove members of a trial board or order that a trial board's composition be changed. As a matter of law, a Mayor is an outsider who is not involved in the disciplinary processes of the BPD in any way.

### C.     *The Mayor is entitled to qualified immunity*.

The Mayor is protected by qualified immunity. In a qualified immunity analysis, the Court's first inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Mellen v. Bunting*, 327 F.3d 355, 2003 U.S. App. LEXIS 8014, 17 (2003). If a constitutional violation has been alleged, the second inquiry is whether the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 18, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The constitutional right must be formulated with specificity, because "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Hodge v. Jones*, 31 F.3d at 167, quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 113 S.Ct. 1084 (1993).

In the present case, it is clear from the discussion set forth above that the Plaintiff has not alleged facts that could establish a constitutional violation by the Mayor. Therefore, the Court need not even consider the second inquiry. Even if the Court did so, however, the Mayor would be protected by immunity, because the right that the Plaintiff advances was not clearly established at the time of the alleged unconstitutional acts.

Because as a matter of law the Mayor plays no part in the BPD disciplinary and trial board process and is in fact prohibited from becoming involved, it is clear that the right asserted by the Plaintiff against the Mayor is not the right to an impartial trial board. The LEOBR provides ample procedures by which the Plaintiff could have challenged the composition of the trial board. The only right that the Plaintiff asserts against the Mayor is the right not to have public officials or public figures comment on current affairs. That asserted right was not clearly established at the time of the alleged unconstitutional acts.

There is no clearly established constitutional right that would force public figures or any other concerned citizen to refrain from making statements on matters of public interest, including police disciplinary proceedings. In fact, the case of *Smith-Berch, Inc. v. Baltimore County*, 68 F. Supp. 2d 602 (D.Md.1999), already cited by counsel for former Police Commissioner Norris, suggests that there was no constitutional violation in the present case and that, therefore, it was not clearly established that the Mayor should not have made statements concerning Mack prior to the trial board hearing. In *Smith-Berch*, the plaintiff argued that it was denied due process when the county zoning commissioner denied its application for a zoning permit. The plaintiff asserted that prior public statements by the county executive had biased the zoning commissioner, who was a political appointee of the county executive. The Court noted that an impartial decisionmaker is an essential element of due process, but pointed out that administrative decisionmakers, like judicial ones, are entitled to a presumption of honesty and integrity. *Smith-Berch*, 68 F. Supp. 2d at 628. The inferences of bias argued by the plaintiff were "simply not sufficient to overcome the presumption of honesty and integrity accorded administrative decisionmakers." *Id*. at 628-29.

Thus, it is clear that the Plaintiff's asserted right was not and is not clearly established. Even if potential trial board members could be influenced by the comments of persons outside the trial board process, the LEOBR provides an officer with the means to ensure that the trial board is impartial. Certainly, the Plaintiff has not alleged a violation of a clearly established constitutional right. Therefore, the Mayor is entitled to qualified immunity.

For the reasons set forth above, the Plaintiff cannot state a claim against the Mayor under §1983; therefore, Count 6 should be dismissed with prejudice and without leave to amend.

**II.     The Court should decline to exercise supplemental jurisdiction over the state law claims.**

If the Court dismisses a plaintiff's federal claims, then it is within the Court's discretion whether to exercise supplemental jurisdiction over the remaining state law claims. *Hector v. Weglein*, 558 F.Supp. 194, 206 (D. Md. 1982) *citing Moor v. County of Alameda,* 411 U.S. 693 (1973). The Supreme Court and the Fourth Circuit have often articulated, however, that if the federal claims are dismissed prior to trial, the court should not exercise its supplemental jurisdiction over the state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996) ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial…the state claims should be dismissed as well"); *Jones v. Ziegler*, 894 F.Supp. 880, 896 (D. Md. 1995) ("a majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits"). There is no compelling reason for the Court to exercise jurisdiction over Plaintiff's state law claims. Accordingly, the Court should decline to exercise supplemental jurisdiction over the state law claims against the Mayor and should dismiss Counts 7, 8 and 9.

**III.    The amended compliant fails to establish state law claims against the Mayor.**

Even if the Court decides to exercise supplemental jurisdiction over the state law claims, the Court should dismiss those claims because they fail to state claims upon which relief can be granted.

   ***A.    The amended complaint fails to allege that the Plaintiff complied with the notice requirements of the Local Government Tort Claims Act.***

The Local Government Tort Claims Act states that "…an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." MD. CODE ANN., Cts. & Jud. Proc. Art., § 5-304.

The LGTCA further requires that a claimant's notice "shall be in writing and shall state the time, place and cause of the injury." *Id.,* § 5-304(b)(3). Timely filing of the notice of a claim is a "condition precedent" to bringing the claim. *Ennis v. Crenca*, 322 Md. 285, 292 (1991). It is intended to provide to local governments the opportunity to make a timely investigation of the facts on order to ascertain the character and extent of the injury and their or their employees' responsibility in connection with it. *Jackson v. Board of Co. Comm'rs*, 223 Md. 164, 167 (1963).

The statutory notice provision has the effect of a statute of limitations. *Rich v. Mayor and City Council*, 265 Md. 647, 650 (1972). Compliance with the statute is a substantive element of a cause of action, *Neuenschwander v. Washington Suburban Sanitary Com.*, 187 Md. 67 (1946), and should be alleged in the complaint. *Hargrove v. Baltimore*, 146 Md. App. 457, 462-63 (2002); *Madore v. Baltimore County*, 34 Md. App. 340, 345 (1976).

If a plaintiff can show good cause for a failure to comply with the notice requirements, the court may entertain the claim, but only if the defendant has not been prejudiced. MD. CODE ANN., Cts. & Jud. Proc. Art., § 5-304(c). The court does not consider the issue of prejudice until after the plaintiff has demonstrated good cause for the failure. *Hargrove v. Baltimore, supra; Downey v. Collins*, 866 F.Supp. 887 (D. Md. 1994).

In the present case, the Plaintiff seeks to assert claims for unliquidated damages against the Mayor, who is an employee of the City. However, the Plaintiff has not alleged that he complied with the requirements of the notice statute with respect to these claims. Moreover, there has been no attempt to show good cause for the failure to give timely notice. The City had no notice of the Plaintiff's claims until the service of the complaint on the Mayor almost two years after the alleged wrongful acts. Accordingly, the Plaintiff has failed to allege a substantive element of his state law causes of action and

should not be permitted to pursue his claims.  The Court should dismiss Counts 7, 8 and 9 as to the Mayor with prejudice and without leave to amend.

      **B.**     *The amended complaint fails to state a claim for interference with contract rights.*

Count 7 of the amended complaint alleges that the Mayor was aware of a contractual relationship between the Plaintiff and the BPD.  *Amended Complaint* at ¶57.  The Plaintiff also alleges that the Mayor's statements about the Plaintiff caused the Plaintiff's termination by unlawful means and that the Mayor acted with actual malice.  *Amended Complaint* at ¶¶58-60.

There are two aspects to the tort of interference with contractual relations: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships…" *Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*, 336 Md. 635, 650 (1994), quoting *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984).  The principle underlying both forms of the tort is that, under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation.  *Alexander & Alexander*, 336 Md. at 650.  The present case involves the narrower form, alleged interference with a contract.  With respect to this form, the Court of Appeals has explained:

> It is thus clear from our cases that even though a third party may for his own benefit intentionally induce one party to terminate a contract with another, this alone will not render him liable in an action for tortious interference if he had a right to cause the breach since, in such circumstances, the conduct would not be wrongful or improper. [Citations omitted.]  But if the party causing the breach acts solely to benefit himself, or to cause injury to another, without a right to so act, such conduct is improper and may subject the party to liability for the injury suffered.  [Citation omitted.]

*Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 765 (1986).

In the present case, the allegations of Count 7 fall short of stating a cause of action. The alleged statements of the Mayor did not cause a breach of the employment contract between the Plaintiff and the BPD. The employment relationship was ended according to law, with all of the procedural safeguards provided by the LEOBR. Moreover, it is clear from the arguments set forth above that the alleged statements of the Mayor were not unlawful and did not cause the termination of the Plaintiff. The Plaintiff had ample means by which he could ensure that his trial board was not biased. Therefore, any statements by the Mayor could not, as a matter of law, have caused the termination of the Plaintiff's employment.

In addition, it is clear that the Mayor had a right to make statements about matters of public interest. There are no allegations of fact to show actual malice on the part of the Mayor. In reality, the Mayor's relationship to the trial board proceeding was that of an interested but non-involved outsider. The fact that the most that the Plaintiff can allege is that the Mayor made public statements about Mack demonstrates the absence of any influence by the Mayor over the trial board proceeding.

Because the Plaintiff has failed to demonstrate that there was a breach of a contract caused by unlawful means or that the Mayor had no right to speak on matters of public interest, the amended complaint fails to state a claim for interference with contract rights. Therefore, the Court should dismiss Count 7 with prejudice and without leave to amend.

    **C.**    *The amended complaint fails to state a claim for conspiracy.*

Count 8 of the amended complaint seeks to assert a claim against Mayor O'Malley, former Police Commissioner Norris and Major Williams for conspiracy. The Plaintiff alleges that these three Defendants conspired among themselves to remove Mack from his position as a police officer by using false testimony and by influencing the trial board pool.

A civil conspiracy has been defined as a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff. *Green v. Wash. Sub. San. Com'n*, 259 Md. 206, 221 (1970). The essence of civil conspiracy lies in the wrongful acts, not in the agreement spawning the conduct. *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation*, 99 Md. App. 696, 705 (1994).

It must be remembered, however, that conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation*, 340 Md. 176, 189 (1995), quoting *Alexander v. Evander*, 336 Md. 635, 645, n.8 (1994). "No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." *Id*. at 190, quoting *Domchick v. Greenbelt Services,* 200 Md. 36, 42 (1952). In *Alleco*, in order to determine whether the counts asserting conspiracy to breach a fiduciary duty and conspiracy to commit fraud stated causes of action, the Court was required first to determine whether the plaintiffs had adequately pleaded that the defendant had committed the underlying torts. *Id*. at 191. In the present case, therefore, in order to state a claim for conspiracy, the Plaintiff must have stated a claim for violating his civil rights or interfering with his contractual rights. For the reasons stated above and those set forth in former Police Commissioner Norris' motion to dismiss, the Plaintiff has failed to state a claim for the underlying torts. Therefore, he has failed to state a claim for conspiracy to commit the underlying torts. *Id*. The Court should dismiss Count 8 as to the Mayor with prejudice and without leave to amend.

> **D.** *The amended complaint fails to state a claim against the Mayor for intentional infliction of emotional distress.*
>> i. <u>The elements of intentional infliction of emotional distress</u>

Count 9 seeks, but fails, to assert a cause of action against the Mayor for intentional infliction of emotional distress ("IIED"). A claim for IIED has four elements: "(1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000), quoting *Harris v. Jones*, 281 Md. 560, 566 (1977). "[E]ach of these elements must be pled and proved with specificity." *Manikhi*, 360 Md. at 367, quoting *Foor v. Juvenile Services Admin.*, 78 Md. App. 151, 175, *cert. denied*, 316 Md. 364 (1989).

"For conduct to meet the test of 'outrageousness,' it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batson v. Shiflett*, 325 Md. 684, 734 (1992), quoting *Harris v. Jones*, 281 Md. at 567. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Batson*, 325 Md. at 736. With respect to the "outrageousness" requirement, the Court of Special Appeals has stated:

> To satisfy that element, conduct must completely violate human dignity. "[E]xtreme and outrageous conduct exists only if 'the average member of the community must regard the defendant's conduct ... as being a complete denial of the plaintiff's dignity as a person.'" *Dick v. Mercantile-Safe*, 63 Md.App. at 276, 492 A.2d 674, quoting *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312, 318 (1963). The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.

*Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60 (1986). For examples of behavior sufficiently extreme to support a claim for IIED, *see Figueiredo-Torres v. Nickel*, 321 Md. 642

(1991)(psychologist had sexual relations with the plaintiff's wife during the time he was treating the couple as their marriage counselor); *B.N. v. K.K.*, 312 Md. 135 (1988)(physician did not tell nurse with whom he had sexual intercourse that he had herpes); *Young v. Hartford Accident & Indemnity*, 303 Md. 182 (1985)(worker's compensation insurer's "sole purpose" in insisting that claimant submit to psychiatric examination was to harass her and force her to abandon her claim or to commit suicide).

Just as the behavior must be extreme, the injury that it causes must be severe. The fourth element of the tort "requires the plaintiff to show that he suffered a *severely* disabling emotional response to the defendant's conduct." *Harris v. Jones*, 281 Md. at 570 (emphasis in original). "One must be unable to function [citation omitted]; one must be unable to tend to necessary matters [citation omitted]." *Hamilton*, 66 Md. App. at 60. Moreover, a plaintiff must set forth in some detail the nature and severity of the injury. It is not enough to plead that a plaintiff suffered "physical pain, emotional suffering and great mental anguish". *Manikhi*, 360 Md. at 369 (quoting *Leese v. Baltimore County*, 64 Md. App. 442, 472, *cert. denied*, 305 Md. 106 (1985), *overruled on other grounds by Harford County v. Town of Belair*, 348 Md. 643 (1998)). Such general and conclusory allegations fall short of the evidentiary particulars that must be pleaded to show a *prima facie* case of severe injury. "In developing the tort of intentional infliction of emotional distress, whatever the relationship between the parties, recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Hamilton*, 66 Md. App. at 61.

    ii.    <u>The amended complaint fails to allege outrageous conduct</u>.

In the present case, the allegations in Count 9 of the amended complaint fall far short of what is required to state a cause of action against the Mayor for IIED. The Plaintiff alleges that, when the Mayor heard the false information about Mack that was being disseminated by Commissioner Norris,

the Mayor began to make public statements "regarding John Mack's lack of usefulness as a Police Officer." *Amended Complaint* at ¶49. He alleges that the Mayor made these statements "in an effort to influence the possible pool from which the members who would serve on the trial board would come." *Amended Complaint* at ¶50. The Plaintiff alleges that the Mayor's actions were "intentional and reckless," *Amended Complaint* at ¶67, and "extreme and outrageous." *Amended Complaint* at ¶68.

These allegations come nowhere near describing the kind of outrageous behavior needed to state a claim for IIED. This tort is directed not at wrongful or unlawful behavior,[4] but rather at truly extreme actions that completely deny the plaintiff's dignity as a person. *Hamilton*, 66 Md. App. at 59. "The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Id*. at 60. At worst, the amended complaint alleges that, upon hearing the Police Commissioner's public statements, the Mayor made statements critical of Mack, intending to influence the officers who might serve on Mack's trial board. Clearly, these allegations do not present the type of behavior actionable as a claim for IIED. Therefore, the Court should dismiss Count 9 as to the Mayor with prejudice and without leave to amend.

     iii.    <u>The amended complaint fails to allege severe emotional harm</u>.

In order to state a claim for IIED, a plaintiff must also plead with specificity that he has suffered "a *severely* disabling emotional response to the defendant's conduct." *Harris v. Jones*, 281 Md. at 570 (emphasis in original). In the present case, the Plaintiff has alleged only that he "suffered great pain and mental suffering." *Amended Complaint* at ¶¶55, 62, 65, 70. It is clearly not enough simply to include such conclusory statements in the amended complaint. Allegations that a plaintiff suffered "physical pain, emotional suffering and great mental anguish" have been held insufficient to state a

---

[4] The Mayor does not concede that any of his actions was improper.

17

cause of action. *Leese v. Baltimore County*, 64 Md. App. at 472, quoted in *Manikhi*, 360 Md. at 369. The amended complaint contains even less detail than the allegations found to be insufficient in *Leese*. Accordingly, the Court should dismiss Count 9 of the amended complaint with prejudice and without leave to amend.

### E. *The Mayor is protected by public official immunity.*

Even assuming that the amended complaint sets forth a state law cause of action against the Mayor, the Mayor is protected from liability by statutory public official immunity. Pursuant to statute,

> An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

MD. CODE ANN., Cts. & Jud. Proc. Art., §5-507(b)(1). This statute contains no limitations as to its application; therefore, it applies to both intentional and non-intentional torts.

Accordingly, the Mayor is immune from liability for all of the state law claims under §§5-507(b)(1), so long as he was a public official performing discretionary acts in the course of his official duties and in the absence of malice. The actual malice necessary to defeat public official immunity has been defined as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Leese v. Baltimore County*, 64 Md. App. 442, 480 (1985). *See also McCoy v. Hatmaker*, 135 Md. App. 693, 719-20 (2000); *Shoemaker v. Smith*, 353 Md. 143, 164 (1999); *Williams v. Baltimore*, 128 Md. App. 1, 19 (1999); *Thomas v. City of Annapolis*, 113 Md. App. 440, 455 (1997).

In the present case, the only actions ascribed to Mayor O'Malley were the alleged making of public statements concerning the Plaintiff's "lack of usefulness" as a police officer after the incident on April 1, 2001. Clearly, the Mayor was a public official and his alleged actions in making statements on

matters of public concern were discretionary acts performed in the scope of his office. Speaking to the public is an integral and discretionary part of serving as Mayor. There are no allegations of any facts to show that Mayor O'Malley acted with an evil or rancorous motive influenced by hate, his purpose being to injure the Plaintiff deliberately and willfully. The only allegations in the amended complaint are conclusory. Therefore, on the facts alleged, Mayor O'Malley is immune from liability and the Court should dismiss the state law claims as to the Mayor with prejudice and without leave to amend.

## CONCLUSION

For the reasons set forth above, Mayor Martin O'Malley respectfully requests that the Court dismiss the amended complaint as to him with prejudice and without leave to amend.

Respectfully submitted,

\_\_/s/_____
DONALD R. HUSKEY (22981)
Deputy City Solicitor
(signed by William R. Phelan, Jr. with the permission of Donald R. Huskey)

\_\_/s/_____
WILLIAM R. PHELAN, JR. (24490)
Principal Counsel
BALTIMORE CITY DEPARTMENT OF LAW
100 Holliday Street
Baltimore, Maryland 21202
Telephone: 410-396-3249; 410-396-4094
Facsimile: 410-547-1025
Attorneys for Martin O'Malley